**WHITEHEAD BROTHERS COMPANY,** M. F. Roach Company, Harwich Lumber Company, and New Haven Trap Rock Co., Plaintiffs,

v.

**UNITED STATES** of America and Interstate Commerce Commission, Defendants.

Civ. A. No. 65–563–J.

United States District Court
D. Massachusetts.

Nov. 24, 1965.

Foley, Hoag & Eliot, Clarence I. Peterson, Loyd M. Starrett, Lawrence A. Sullivan, Boston, Mass., for plaintiffs.

W. Arthur Garrity, Jr., U. S. Atty., John Paul Sullivan, Asst. U. S. Atty., Boston, Mass., Donald F. Turner, Asst Atty. Gen., John H. D. Wigger, Atty., Dept. of Justice, Washington, D. C., for the United States.

Robert W. Ginnane, Gen. Counsel, Clarence William Vandegrift, Atty., I.C.C. Washington, D. C., John F. Curley, Atty., I.C.C., Boston, Mass., for the I.C.C.

Edmund M. Sweeney, Boston, Mass., Thomas P. Hackett, and James W. Grady, New Haven, Conn., for New York, New Haven, and Hartford Railroad Co., debtor (intervenor).

Before ALDRICH, Chief Judge of the Court of Appeals, and JULIAN and CAFFREY, District Judges.

JULIAN, District Judge.

The plaintiff Whitehead Brothers Company (Whitehead) seeks a preliminary in-

junction, pending final determination of this action, staying the operation of an order entered by the defendant Interstate Commerce Commission on July 21, 1965. This order granted the application of the intervening defendant, New York, New Haven and Hartford Railroad Company (the New Haven), for permission to abandon the portion of its line of railroad extending from South Dennis to North Eastham, a distance of about 18.6 miles, all in the county of Barnstable, Massachusetts.

Whitehead claims that it would suffer irreparable injury if the operation of the order is not stayed. The other three plaintiffs conceded at the hearing that they could not make a showing of irreparable injury.

On November 13, 1963, the New Haven, a common carrier by railroad subject to the Interstate Commerce Act (49 U.S.C. § 1 et seq.), and now in reorganization in bankruptcy in the United States District Court for the District of Connecticut, filed an application under section 1(18) of the Act for authority to abandon the branch line in question. Prior to September 5, 1965, the stations of North Harwich, Harwich, Brewster, Orleans, and North Eastham on this branch line were being served by a local freight train operating two trips weekly from Hyannis, Massachusetts. This service was terminated on September 5, 1965.

The Commission referred the application to an examiner for hearing and recommendation of an appropriate order with the reasons therefor. After the hearing, the examiner reported his findings, certificate, and recommended order permitting abandonment of the branch by the New Haven. The Commission, on July 21, 1965, after approving the examiner's findings and conclusions as proper and correct in every material respect, entered its order adopting the examiner's certificate and recommended order as the certificate and order of the Commission effective 20 days from July 26, 1965, the date of service thereof.

As the result of a conference with Judge Caffrey on August 16, 1965, rail service on the branch was not terminated until September 5, 1965.

The Commission's ultimate finding was that the present and future public convenience and necessity permitted the abandonment of the branch line.

Among the Commission's subsidiary findings were the following:

1. That a requirement to continue operation of the line would cause applicant to incur substantial losses.

2. That a requirement to continue operations, particularly in the light of system losses, would be unwarranted in the absence of overriding public considerations, which do not appear of record.

3. That future operation of the line would be a burden upon the applicant and upon interstate commerce.

Whitehead contends that a preliminary injunction should be issued for the following reasons:

1. The complaint discloses a reasonable probability that the plaintiffs will prevail on the merits.

2. Whitehead will suffer irreparable harm unless the Commission's order is stayed and no public interest will be adversely affected by granting a stay.

■ The Court is of the opinion that the plaintiffs have not shown that there is a reasonable probability that they will prevail on the merits. A close study of the record presently before us, namely, the pleadings, the exhibits attached thereto, and the affidavits, and of the contentions made orally and in writing by the parties, has failed to reveal any probable basis for setting aside or annulling the order entered by the Commission.

■ Whitehead has furthermore failed to show that it will suffer irreparable harm if the Commission's order is not stayed pending final determination of this action. Whitehead is in the business

of mining sand at quarries in Provincetown and shipping the sand to customers from a loading platform in North Eastham. This business is seasonal. Shipments of sand are made almost entirely during the months of April through November. Trucks have been used to haul the sand from the pits in Provincetown to the railhead in North Eastham, a distance of about 20 miles. The abandonment of the branch from North Eastham to South Dennis would necessitate trucking the sand an additional distance of about 20 miles to South Dennis. Whitehead claims that trucking the sand over the added distance would increase the cost of transportation by one dollar a ton. This is probably true. But it was not shown that injury of an irreparable nature would result from such added cost of transportation. Financial loss or diminished profits are not necessarily synonymous with irreparable injury. Furthermore, there is no indication that Whitehead has ever negotiated with its customers for a price increase to meet in whole or in part the added cost of transportation that would result from the abandonment of the branch, despite the fact that the application for authority to abandon the branch was filed as long ago as November, 1963.

Whitehead asserts that no public interest would be adversely affected by granting a stay.

We do not agree.

It appears from the Commission's findings and from the affidavits before us that the line is in a run-down condition and is not reasonably safe for normal operation.

The normal speed for branch line operations is 25 miles per hour. The condition of the branch is so poor that the operation of freight trains at speeds in excess of 15 miles per hour would create an unreasonably great risk of derailment.

The Commission has found that at least $132,000 would have to be spent at once to restore the branch for 25 miles-per-hour speeds and that this estimate is "admittedly not enough to thoroughly rehabilitate the line."

The Commission has found that the New Haven "has suffered staggering operating losses for some time and is financially unable to undertake any extensive rehabilitation program on this branch." It has further found that the line is so run-down and unsafe for continued operation that its abandonment should be allowed.

The Commission finds that there is no convincing showing "that continued operation of this line is required by future public convenience and necessity."

Whitehead has not shown what benefit would accrue to the public to justify the financial burden that would be imposed on the New Haven to restore the line to a condition sufficiently safe to warrant its operation during the pendency of this action. The Commission has found that future operation of the branch would be a burden on the railroad and upon interstate commerce. This finding is clearly supported by the detailed findings made by the hearing examiner and adopted by the Commission. Since no showing to the contrary was made at the hearing, and since the evidence on which the hearing examiner based his findings is not before us, it will be assumed at this stage of the proceedings that the findings are supported by substantial evidence.

The Court is of the opinion that it would not be in the public interest to stay the operation of the order pending final decision of the case.

The application for a preliminary injunction is denied.