**BAGGETT TRANSPORTATION COMPANY, Appellant,**

v.

**HUGHES TRANSPORTATION, INC., and Interstate Commerce Commission, Appellees.**

**No. 19149.**

United States Court of Appeals Eighth Circuit.

April 30, 1968.

Rehearing Denied May 28, 1968.

**712**

Robert E. Joyner, of Wrape & Hernly, Memphis, Tenn., for appellant; Lee Reeder, of Reeder, Griffin & Dysart, Kansas City, Mo., and William G. Somerville, Jr., Lange, Simpson, Robinson & Somerville, Birmingham, Ala., on the brief and reply brief.

Thomas W. VanDyke, of Linde, Thomson, VanDyke, Fairchild & Langworthy, Kansas City, Mo., for appellee, Hughes Transportation, Inc.; Albert Thomson, Kansas City, Mo., and Frank B. Hand, Jr., Washington, D. C., on the brief.

Harry F. Horak, Fort Worth, Tex., for appellee, Interstate Commerce Commission; Bernard A. Gould, Bureau of Enforcement, Interstate Commerce Commission, Washington, D. C., on the brief.

Before VOGEL, Senior Circuit Judge, and BLACKMUN and LAY, Circuit Judges.

VOGEL, Senior Circuit Judge.

Baggett Transportation Company, defendant-appellant, hereinafter referred to as Baggett, appeals from an order entered January 8, 1968, by the United States District Court for the Western District of Missouri, Southwestern Division, which order granted a temporary injunction against Baggett in a suit brought by Hughes Transportation, Inc., plaintiff-appellee, a competing motor common carrier, such action being instituted pursuant to 49 U.S.C.A. § 322(b) (2); Pub.L. 89–170, 79 Stat. 649 (1965). We have jurisdiction of this appeal under 28 U.S.C.A. § 1292(a) (1). A chronology of the events leading up to the granting of the temporary injunction is essential.

On May 10, 1966, Tri-State Motor Transit Company, hereinafter Tri-State, (Hughes is a wholly owned subsidiary of Tri-State) commenced a civil injunction action against Baggett pursuant to the provisions of 49 U.S.C.A. § 322(b) (2). Such case was docketed as civil action No. 2000 in the Western District of Missouri, Southwestern Division.[1] On June 16, 1966, the Interstate Commerce Commission instituted an investigation proceeding in No. MC–C–5213 entitled "Baggett Transportation Company—Investigation and Revocation of Certificates". The ICC then filed in civil action No. 2000 a notice pursuant to 49 U.S.C.A. § 322(b) (3) advising the District Court that it was considering the issues involved in such suit. Thereupon the District Court entered an order staying that action. On September 8, 1967, the ICC rendered its decision in No. MC–C–5213 construing Baggett's certificate of public

---

[1] Prior to commencement of the Tri-State suit, civil action No. 2000, an informal opinion was obtained from the ICC as to the legality of Baggett's transportation operations by which it tacked and joined authorities in violation of the following restriction in its certificate:

"* * * No single portion of the authority contained hereinabove shall be tacked or joined, directly or indirectly, with any other authority contained hereinabove for the purpose of performing any through service."

Such opinion letter, dated February 7, 1966, was introduced at the hearing on the instant case, Hughes v. Baggett, on December 27, 1967, as Exhibit No. P-X 1. This opinion clearly indicated that Baggett was operating under a combination of authorities which amounted to "* * * tacking or joining them directly for the purpose of performing a through service within the meaning of the restriction".

convenience and necessity and finding that it was not authorized to render the type of service being performed by it and ordered it to cease and desist from such operations. The order of the ICC was to become effective on November 9, 1967.

On October 31, 1967, Baggett filed an action against the ICC and the United States of America in the District Court for the Northern District of Alabama, requesting the designation of a Three-Judge Court under the provisions of 28 U.S.C.A. § 2284, to review, set aside and enjoin the enforcement of the ICC's order. Baggett's motion for a temporary restraining order under 28 U.S.C.A. § 2284(3) was heard by Chief Judge Seybourn H. Lynne at Birmingham, Alabama, on November 6, 1967.

Judge Lynne, being advised of the proceedings before Judge Hunter in the Western District of Missouri, withheld entering any order, preferring to await the outcome of civil action No. 2000 which was set for trial before Judge Hunter on November 8, 1967. At the conclusion of the hearing on November 8, 1967, Judge Hunter terminated the stay theretofore entered. He further held that he would not enter a temporary injunction in view of the fact that the ICC order requiring Baggett to cease and desist went into effect at midnight on that day. Judge Hunter's ruling in civil action No. 2000 was made at 4:00 o'clock p.m. on November 8, 1967. That evening at about 9:00 p. m. Baggett's attorneys obtained a restraining order from Judge Lynne at Birmingham, Alabama, enjoining the enforcement and effectiveness of the ICC's cease and desist order.

On December 15, 1967, Hughes, the wholly owned subsidiary of Tri-State, filed the instant action in the Western District of Missouri, the same being docketed as civil action No. 2079. It asked for an injunction against Baggett to restrain Baggett from performing operations in interstate commerce contrary to the provisions of Baggett's operating certificate of public convenience and necessity. At the same time Hughes asked

for a temporary injunction. Baggett filed its answer and the ICC filed its motion for leave to intervene as party *plaintiff*. (On this appeal the ICC continues to support the position of Hughes, and has filed brief and had its counsel present oral argument.) A hearing on Hughes' motion for temporary injunction was heard on December 27, 1967, by Judge Hunter who, after taking the matter under advisement, did on January 8, 1968, render his memorandum opinion and order enjoining Baggett from tacking or joining, directly or indirectly, any two or more segments of its authority in No. MC–76177, Sup. 273, upon condition that Hughes file an approved bond in the amount of $100,000 to protect the interests of Baggett should the temporary injunction be later proven unwarranted by the facts and circumstances. Such bond was filed and approved on January 8, 1968, the same day as Judge Hunter's order was entered.

49 U.S.C.A. § 322(b) (2) provides, insofar as it may be pertinent herein:

"If any person operates in clear and patent violation of any provisions of section 303(c), 306, 309, or 311 of this title, or any rule, regulation, requirement, or order thereunder, any person injured thereby may apply to the district court of the United States for any district where such person so violating operates, for the enforcement of such section, or of such rule, regulation, requirement, or order. The court shall have jurisdiction to enforce obedience thereto by a writ of injunction or by other process, mandatory or otherwise, restraining such person, his or its officers, agents, employees, and representatives from further violation of such section or of such rule, regulation, requirement, or order; and enjoining upon it or them obedience thereto. A copy of any application for relief filed pursuant to this paragraph shall be served upon the Commission and a certificate of such service shall appear in such application. The Commission may appear as of right in any such action. The party

who or which prevails in any such action may, in the discretion of the court, recover reasonable attorney's fees to be fixed by the court, in addition to any costs allowable, under the the Federal Rules of Civil Procedure, and the plaintiff instituting such action shall be required to give security, in such sum as the court deems proper to protect the interests of the party or parties against whom any temporary restraining order, temporary injunctive, or other process is issued should it later be proven unwarranted by the facts and circumstances."

The foregoing section was a 1965 amendment, the purpose of which was to "afford injured parties a measure of self-protection against operations which are openly and obviously unlawful". 1965 U.S.Code Cong. & Adm.News, Vol. 2, at p. 2931. Prior thereto only the Commission could go into District Court and obtain an enforcement order. Obviously, the Congress desired to expedite the remedy where "clear and patent" violations were established.

Baggett's certificate of public convenience and necessity contained the following restriction:

" * * * No single portion of the authority contained hereinabove shall be tacked or joined, directly or indirectly, with any other authority contained hereinabove for the purpose of performing any through service."

Judge Hunter found that Baggett had been operating and would continue to operate in clear and patent violation of §§ 303(c) and 306 of Title 49; that its tacking of its various authorities was in direct opposition to the restriction contained in its certificate and clearly exceeded the authority granted it.

The primary question on appeal relates to the right and propriety of the District Court for the Western District of Missouri to entertain and issue the injunction when there was pending at the same time the review action in the District Court for the Northern District of Alabama.

■ First, we make the general observation that the granting of a temporary injunction is addressed to the discretion of the trial court and not that of the appellate court. The merits of the case will not be considered excepting only as their consideration may be necessary to determine whether the trial court " * * * improvidently exercise[d] its judicial discretion." 7 Moore Federal Practice, § 65.04 [2] at 1630–31; Benson Hotel Corp. v. Woods, 8 Cir., 1948, 168 F.2d 694.

It is the contention of Baggett, the appellant herein, that the complained-of injunction entered January 8, 1968, by Judge Hunter of the Western District of Missouri had the direct effect of nullifying the order of Judge Lynne of the Northern District of Alabama dated November 8, 1967, which enjoined the enforcement and effectiveness of the ICC's cease and desist order. Appellant's counsel are frank to state that " * * * research has revealed no federal and only one state-court case which has involved or discussed the precise point here—that is, the nullification by one district court through injunctive relief of an order restraining the enforcement of an administrative decision pending its review."

■ An analysis of the 1965 amendment and its purposes and objectives would seem to be called for. 49 U.S.C.A. § 322(a), (b) as it existed prior to the 1965 amendment limited enforcement actions to the Commission itself or its duly authorized agent who could apply to the District Court of the United States for any District where such carrier or broker operates for enforcement. It seems obvious that the Congress, by the passage of § 322(b) (2), effective September 6, 1965, sought to enlarge the number of persons who could seek enforcement in the District Court to include any person injured by clear and patent violations of any of the provisions of §§ 303(c), 306, 307 or 311 of Title 49. As already referred to supra, this particular section is designed to "afford injured parties a measure of self-protection against operations which are openly and obviously un-

lawful." 1965 U.S.Code Cong. & Adm. News, Vol. 2, at p. 2931. The statute as amended set forth the basic elements of the private right of action:

(1) Defendant must be operating in clear and patent violation of certain sections of the Interstate Commerce Act and plaintiff must be injured by such unlawful operations.

(2) Plaintiff may file suit in the federal district court of any district where the defendant operates and the prevailing party may, in the discretion of the court, recover reasonable attorney's fees as well as costs.

(3) The District Court can issue an injunction or restraining order enforcing obedience to the law, but plaintiff must post security to protect the interests of any party against whom a temporary restraining order or injunction is issued should it prove to be unwarranted.

(4) A copy of the complaint must be served upon the ICC, which can intervene as of right. The ICC may notify the court that it is considering the matter and the court shall stay further action pending disposition of the proceeding before the Commission.

Of the 1965 amendment, the Honorable Oren Harris, Chairman of the Committee on Interstate and Foreign Commerce (now Chief Judge of the Western District of Arkansas) stated:

> " * * * We firmly believe this new enforcement tool will be a good one. It should not be subverted by any practice which will avoid or delay prompt settlement of the issues." 111 Cong.Rec. 9679.

The Congressional concern evidenced by Congressman Harris' remarks is well placed. The goal of seeking more efficient action through the administrative process than can be obtained through the courts has not always been realized. There is in the first instance the undue delay that may result from the administrative decision-making process itself. See 1 Davis, Administrative Law § 8.08, pp. 548–50. Further delay in effectively enforcing the administrative decision can result from lengthy review proceedings of the administrative action in the courts. For example, the three-year delay in enforcing the administrative decision in the *Covington Mills* case eventually succeeded in rendering a valid administrative decision moot. Mitchell v. Covington Mills, 1955, 97 U.S.App.D.C. 165, 229 F.2d 506, cert. denied, 1956, 350 U.S. 1002, 76 S.Ct. 546, 100 L.Ed. 865, see, Gelhorn & Byse, Administrative Law, pp. 232–35.

The instant case is a further example of the possible harm occasioned by unnecessary delay in effectuating an administrative decision because of judicial review of the administrative decision. The District Court has found that Baggett's operations deprive appellee Hughes of revenues ranging from $300,000 to $500,000 per year. The stay order permitting Baggett to continue its operations while the review proceedings continued was entered on November 8, 1967. The Three-Judge District Court designated to review the ICC order had not sat to hear the review at the time of the oral argument in this case. It is obvious that appellee Hughes will lose considerable revenue if the injunction below is dissolved and the ICC order is eventually upheld. Under the current status of the law, however, Hughes would have no remedy to recover its damages from Baggett. McFaddin Express, Inc. v. Adley Corp., 2 Cir., 1966, 363 F.2d 546, 549–550, cert. denied, 385 U.S. 900, 87 S.Ct. 206, 17 L.Ed.2d 132; Riss & Company v. Association of American Railroads, D.C.D.C., 1959, 178 F.Supp. 438.

The Congressional concern with eliminating delay which prevents innocent parties from securing prompt and effective protection was manifest in the 1965 amendment. Thus, in discussing the amendment increasing the civil penalties, the House Report appropriately notes that: "Under existing law, procedures for dealing with certain motor carrier violations are often slow and cumbersome, and frequently ineffective." 1965 U.S.Code Cong. & Adm.News, Vol. 2, at p. 2929. Certainly one way of secur-

ing prompt and effective protection for innocent persons injured by the clearly illegal operations of other carriers is to give the injured persons the right to apply for injunctive relief independently of any Commission proceedings. § 322 (b) (2) accomplishes this by allowing injured persons to enjoin "clear and patent" violations.

 Not only is a remedy provided therein, the words "clear and patent" are judiciously used to indicate jurisdiction separate and apart from the ICC's primary jurisdiction. Thus the House Report notes that, " * * * the words 'clear and patent' are used and are intended as a standard of jurisdiction rather than as a measure of the required burden of proof." 1965 U.S.Code Cong. & Adm.News, Vol. 2, at p. 2931. In order to regain primary jurisdiction of the controversy and also to prevent the use of § 322(b) (2) to harass carriers legitimately operating, the ICC may take jurisdiction of the matter under § 322(b) (3) and stay further action in the District Court. See 1965 U.S.Code Cong. & Adm.News, Vol. 2, at p. 2943. Thus it is clear that the court below did have jurisdiction and has not invaded the primary jurisdiction of the ICC because while the ICC has intervened, it has not sought to stay under § 322(b) (3).

Appellant argues that such a stay was filed by the ICC in the original Tri-State suit and § 322(b) (3) cannot be avoided by simply filing a new suit in which the ICC declines to file a stay. We do not believe that appellant's interpretation comports with a literal reading of the two sections. § 322(b) (2) contains an affirmative grant of jurisdiction to the District Courts, whereas § 322(b) (3) is only permissive in allowing the ICC to seek a stay by filing a notice "In any action brought under paragraph (2) * * *." Obviously this is an action brought under paragraph (2) and the ICC has not filed for a stay. Neither are we able to agree with the premise underlying this argument to the effect

that the issues in the suit filed by Hughes and that filed by Tri-State, which has now in effect become the Alabama review proceeding, are identical. Obviously the parties are different, the equities may be different, and the injury may differ in effect and extent. There are further substantial differences between the suit brought by Hughes herein in the Western District of Missouri and the suit brought by Baggett in the Northern District of Alabama. In the former, enforcement action may be brought by any plaintiff who is injured by the clear and patent violation of the Act; attorney's fees as well as costs may be collected; an injunction or restraining order enforcing obedience to the law may be granted immediately, and plaintiff must post security to protect the interests of the defendant in the event the restraining order or injunction be unwarranted. We think, then, Congress was interested in providing for an immediate relief with proper protection for anyone who might be injured thereby. No such provisions are found in the statute authorizing the review action commenced by Baggett in the Northern District of Alabama. Such benefits are substantial and place the instant action on an entirely different level from the action commenced by Baggett in the Northern District of Alabama.

 While the difference in level stems from the statutory scheme encompassed in the 1965 amendment, the difference may be emphasized by the distinct issues involved in determining whether an injunction should issue by the court below and whether a stay order should issue from the reviewing court. § 10(d) of the Administrative Procedure Act provides that a reviewing court may stay the order of an administrative agency upon "such conditions as may be required and to the extent necessary to prevent irreparable injury." 5 U.S.C.A. § 1009(d). See 28 U.S.C.A. § 2324. In Virginia Petroleum Job. Ass'n v. Federal Power Commission, 1958, 104 U.S.App.D.C. 106, 259 F.2d 921, 925, the conditions which must be met before a stay may be granted

of an administrative agency order were outlined. The four requirements were:

"* * * (1) Has the petitioner made a strong showing that it is likely to prevail on the merits of its appeal? * * * (2) Has the petitioner shown that without such relief, it will be irreparably injured? * * * (3) Would the issuance of a stay substantially harm other parties interested in the proceedings? * * * (4) Where lies the public interest? * * *."

Accord, Eastern Air Lines v. Civil Aeronautics Board, 2 Cir., 1958, 261 F.2d 830; Associated Securities Corp. v. Securities & Exch. Commission, 10 Cir., 1960, 283 F.2d 773, 774–775; Hamlin Testing Lab., Inc. v. United States Atomic Energy Commission, 6 Cir., 1964, 337 F.2d 221, 222; Covington v. Schwartz, D.C.Cal., 1964, 230 F.Supp. 249, modified on other grounds and aff'd, 9 Cir., 1965, 341 F.2d 537. The test is apparently the same under 28 U.S.C.A. § 2324. See, Whitehead Brothers Co. v. United States, D.C.Mass., 1965, 247 F. Supp. 614. This test is obviously different from that involved in determining whether a District Court should issue an injunction pursuant to § 322(b) (2) which requires only a clear and patent violation and injury thereby to the petitioner.

■ In this appeal, Baggett claims bitterly that as a matter of comity and of the orderly administration of justice the District Court for the Western District of Missouri should have refused to exercise its jurisdiction to interfere with the District Court action and decree in the Northern District of Alabama. We do not so find. The orders are different and are based upon separate provisions of the statute. The granting of one does not necessarily prohibit the exercise of the other. In this regard, however, it could possibly be said that if the waters of comity between courts be muddied here, it was Baggett who did the muddying. Baggett was a defendant in civil action No. 2000 brought in May 1966 in the Western District of Missouri. It was aware of the ICC's informal opinion of February 7, 1966. It was aware of the ICC's decision of September 8, 1967, which arose out of the Tri-State suit against Baggett commenced in the Western District of Missouri. Judge Hunter's oral opinion and ruling in case No. 2000 in the Western District of Missouri actually preceded the restraining order issued by the District Court for the Northern District of Alabama. Judge Hunter indicated by his opinion that he expected the ICC's cease and desist order to become effective after 12:01 a. m. on November 9, 1967. Judge Hunter also made clear that his restraint depended in part, at least, on his belief that the Alabama court was not going to enter a restraining order preventing the ICC order from going into effect. Accordingly, he issued no cease and desist order of his own, but his intent was apparent and the effect of his oral ruling was the same as if he had done so. He was willing to allow the ICC's order to become effective instead of issuing one of his own. His intent was clear. If comity be involved at all, then we think no restraining order would have been issued by the Alabama court, had the latter been fully apprised of Judge Hunter's ruling and intent.

■ Appellant also argues that historically a preliminary injunction could be used only to preserve the status quo so that to the extent that the preliminary injunction changes the status quo, it must be overruled. Initially, it might be noted that, "Sometimes the chief value of history is the demonstration of the irrelevance of history to modern problems * * *." Francis A. Allen, Book Review, 50 Minn.L.Rev. 997. It is significant here that the status quo changed was the operations of Baggett found by the lower court to be in clear and patent violation of Baggett's authority. The change in status quo thus enjoined Baggett's illegal operations and this was the purpose of § 322(b) (2).

■ We think the language used by Mr. Justice Clark, speaking for a unanimous court in United States v. Borden Co., 1954, 347 U.S. 514, 518–519, 74 S.Ct. 703, 98 L.Ed. 903, is applicable to the Interstate Commerce Act, particularly 49 U.S.C.A. § 322(b) (2) as it was to § 15 of the Clayton Act, 15 U.S.C.A. § 25, with which the Supreme Court there dealt:

"* * * The private-injunction action, like the treble-damage action under § 4 of the Act, supplements government enforcement of the antitrust laws; but it is the Attorney General and the United States district attorneys who are primarily charged by Congress with the duty of protecting the public interest under these laws. The Government seeks its injunctive remedies on behalf of the general public; the private plaintiff, though his remedy is made available pursuant to public policy as determined by Congress, may be expected to exercise it only when his personal interest will be served. *These private and public actions were designed to be cumulative, not mutually exclusive.* S.Rep. No. 698, 63d Cong., 2d Sess. 42; cf. Federal Trade Comm'n v. Cement Institute, 333 U.S. 683, 694–695 [68 S.C. 793, 92 L.Ed. 1010] (1948). '* * * [T]he scheme of the statute is sharply to distinguish between Government suits, either criminal or civil, and private suits for injunctive relief or for treble damages. Different policy considerations govern each of these. *They may proceed simultaneously or in disregard of each other.*' United States v. Bendix Home Appliances, 10 F.R.D. 73, 77 (S.D.N.Y.1949). In short, the Government's right and duty to seek an injunction to protect the public interest exist without regard to any private suit or decree." (Emphasis supplied.)

We conclude that Judge Hunter arrived at the most equitable solution possible; that in so doing he did not abuse the discretion resting on him and accordingly, this case is affirmed.