LEONARD BROS. TRUCKING CO., Inc.,
Plaintiff,

v.

UNITED STATES of America and Interstate Commerce Commission,
Defendants,

and

Munitions Carriers Conference, Inc., Tri-State Motor Transit Co., Hughes Transportation, Inc., Riss & Co., Inc., and C. I. Whitten Transfer Co., Intervenors-Defendants.

Civ. No. 69-646.

United States District Court
S. D. Florida.

July 18, 1969.

894

Thos. B. DeWolf, of Helliwell, Melrose & DeWolf, Miami, Fla., and Turney & Turney, Washington, D. C., for plaintiff.

Lloyd G. Bates, Jr., Asst. U. S. Atty., for the United States.

Emmanuel H. Smith, Washington, D. C., for Interstate Commerce Commission.

Wm. P. Simmons, Jr., and Karl Hart, of Shutts & Bowen, Miami, Fla., and J. H. Dail, Jr., of Croft & Dail, Washington, D. C., for Munitions Carriers Conference, Inc.

J. Thomas Cardwell, of Akerman, Senterfitt, Eidson, · Mesmer, Robbinson & Wharton, Orlando, Fla., for Gateway Transportation Co., Inc., C. W. Transport, Inc., Clairmont Transfer Co., Inc. and Allard-Express, Inc.

Shelby Highsmith, Miami, Fla., and Elliott Bunce, of Rice, Carpenter & Carraway, Washington, D. C., for Regular Common Carrier Conference of American Trucking Associations, Inc.

Before DYER, Circuit Judge, CHOATE, Senior District Judge, and MEHRTENS, District Judge.

DYER, Circuit Judge:

Spawned amongst a multiplicity of litigation in various district courts in various states, this suit began as a civil action by Leonard Bros. Trucking Co., Inc., against the United States and the Interstate Commerce Commission, to enjoin and set aside two ICC orders, *International Transport*[1] and *Ace Doran*,[2] which ruled that certain commodities are beyond the purview of ICC "heavy haulers" Certificates of Public Convenience and Necessity authorizing interstate transportation of commodities which, because of their size or weight, require the use of special equipment. Finding that one of the orders arose out of the referral of an issue to the ICC by the United States District Court for the Western District of Missouri, we conclude that that Court has exclusive jurisdiction and venue of this action insofar as it seeks to set aside that order and that the instant suit to that extent should be transferred to that Court. We additionally conclude that because of the interrelationships of the two ICC orders and the questions which will be determined by that Court upon the partial transfer of this action, due regard for the conservation of judicial energies requires a stay of the remaining proceedings in this Court pending the outcome of the Missouri proceedings.

On June 14, 1967, Tri-State Motor Transit Company and certain other munitions haulers filed suit against International Transport, Inc. in the United States District Court for the Western District of Missouri, Southwestern Division, under the so-called "self-help" provisions of section 222(b) (2) of the Interstate Commerce Act, 49 U.S.C.A. § 322(b) (2), seeking to enjoin Interna-

---

1. Orders dated December 31, 1968, and April 22, 1969, in I.C.C. Docket No. MC-C-5766, International Transport, Inc.—Investigation and Revocation of Certificates.

2. Order dated April 22, 1969, in I.C.C. Docket No. MC-C-4397, Ace Doran Hauling & Rigging Co., Investigation of Operation.

tional from transporting Class A and Class B explosives and related dangerous articles. On June 30, 1967, following a hearing, Judge Elmo B. Hunter entered extensive findings of fact and conclusions of law in the suit, No. 2054, and a preliminary injunction restraining International from transporting Class A and B explosives which when boxed or packaged do not exceed 150 pounds per box whether palletized or unpalletized. Judge Hunter did not, however, enjoin the transportation by International of 500 and 750 pound bombs. The Judge concluded that although the transportation of the Class A and B explosives by International constituted a "clear and patent" violation of the Act, 49 U.S.C.A. §§ 303 (c) and 306, enjoinable under 49 U.S. C.A. § 322(b) (2), a determination of whether 500 and 750 pound bombs could be transported under a heavy hauler certificate "is obviously of the type Congress intended to be decided in the first instance by the Interstate Commerce Commission in the exercise of its expertise."

By an order dated September 14, 1967, the Interstate Commerce Commission instituted an investigation into the authority of International to carry 500 and 750 pound bombs. The ICC then notified Judge Hunter that it intended to consider the matter then pending in No. 2054, and on October 23, 1967, Judge Hunter entered an order, mandatory under 49 U.S.C.A. § 322(b) (3), staying further action in No. 2054 pending disposition of the ICC proceeding or until further order of the Court.[3]

On December 31, 1968, the ICC entered its order holding that those persons with heavy hauler certificates were not authorized to carry the explosives involved in the District Court case, including 500 and 750 pound bombs. International Transport, Inc.—Investigation and Revocation of Certificates, I.C.C. Docket No. MC–C–5766. International and other heavy haulers were not pleased. Upon learning of the decision, Leonard Bros. Trucking Co., Inc., a heavy hauler and plaintiff herein, sought and was permitted to intervene in the ICC's *International* proceedings for the purpose of seeking rehearing of the decision.[4]

On April 22, 1969, the ICC entered an order denying Leonard Bros. Trucking Co.'s petition for rehearing of the Commission's *International* decision. On the same date the entire Commission issued its decision in a separate proceeding, Ace Doran Hauling & Rigging Co., Investigation of Operations, I.C.C. Docket No. MC-C-4397, in which the Commis-

3. The order of October 23, 1967, was amended on January 3, 1968, to state that "such matters are hereby referred to the said Commission for determination as provided in Title 28, Section 1336(b), U.S. Code." The order of January 3rd was thereafter vacated by an order entered on February 29, 1968, in which it was recited that the original order of October 23rd was sufficient to confer jurisdiction upon the Court under the provisions of 28 U.S.C.A. § 1336(b). The only explanation for the orders of January 3rd and February 29th which has been offered by counsel before this Court is that Judge Hunter simply was of the opinion that the January 3rd order, which explicitly mentioned the provisions of 28 U.S.C.A. § 1336(b), was unnecessary in that the October 23rd order fell under section 1336(b) without expressly invoking it. As will appear *infra* we are in agreement with Judge Hunter that the October 23rd order was within the purview of section 1336(b).

4. On January 31, 1969, a group of holders of ICC munitions carrier certificates brought suit against Leonard Bros. in the United States District Court for the District of Kansas, No. KC–2922, pursuant to 49 U.S.C.A. § 322(b) (2), to enjoin Leonard Bros. from further transportation of explosives. Leonard Bros. has been transporting shipments containing Class A and B explosives since approximately 1959 in reliance upon various ICC decisions interpreting "size or weight" or "heavy hauling" under its certificate.
A seemingly related matter is pending in the District Court for the District of North Dakota. It is not clear what this latter suit entails, although apparently it is also a suit under section 322(b) (2).

sion amplified guidelines for interpretation and future application of "size or weight" restrictions, affirming its *International Transport* decision in the process. Since both the *International Transport* and *Ace Doran* decisions adversely affect heavy haulers by curtailing the commodities they can carry, Leonard Bros. on May 28, 1969, filed the instant action against the United States and the Interstate Commerce Commission seeking to enjoin and set aside the ICC's *International Transport* and *Ace Doran* decisions. On June 2, 1969, International Transport filed a new action in the Western District of Missouri, No. 2136, also to set aside the ICC orders. On June 3, 1969, this Court entered a temporary restraining order against the United States and the Interstate Commerce Commission temporarily restraining them from placing the *International Transport* and *Ace Doran* orders into effect. On the same date orders were entered granting motions by various holders of munitions carrier certificates for leave to intervene. On June 20, 1969, the Chief Judge of the Fifth Circuit entered an order constituting this three-judge court, before which are motions by various intervenors-defendants to vacate the restraining order and to dismiss the complaint, upon which a hearing has been held.

The intervenors-defendants take the position, unaccompanied by the United States and ICC who remain aloof on the issue, that exclusive jurisdiction and venue of a civil action to enjoin or set aside the ICC's *International Transport* order is in the District Court for the Western District of Missouri.[5] They bottom their position upon the provisions of 28 U.S.C.A. §§ 1336(b) and 1398(b). Section 1336(b) states as follows:

(b) When a district court or the Court of Claims refers a question or issue to the Interstate Commerce Commission for determination, the court which referred the question or issue shall have exclusive jurisdiction of a civil action to enforce, enjoin, set aside, annul, or suspend, in whole or in part, any order of the Interstate Commerce Commission arising out of such referral.

Section 1398(b) is a corresponding venue provision which states:

(b) A civil action to enforce, enjoin, set aside, annul, or suspend, in whole or in part, an order of the Interstate Commerce Commission made pursuant to the referral of a question or issue by a district court or by the Court of Claims, shall be brought only in the court which referred the question or issue.

The above provisions were the result of 1964 amendments to sections 1336 and 1398 by which Congress attempted to provide a manner for keeping issues before a court which is familiar with them. The problem sought to be avoided typically arose when an issue was presented in a suit by a carrier which was regarded as being within the primary jurisdiction of the Interstate Commerce Commission, requiring referral of that issue to the Commission for decision. Under the pre-amendment law, appeals from the ICC orders entered pursuant to such referrals did not necessarily go to the court that referred the issue to the Commission, and in the case of issues referred to the Commission by the Court of Claims, appeal was never to the referring court. This was because

5. The United States and ICC have filed a statement of their position which goes only as far as urging that the United States District Court for the Western District of Missouri, sitting as a single judge, at the most would have jurisdiction to review the ICC's *International Transport* decision, and then only insofar as it pertains to the specific question of operations of International Transport, Inc., and not as it may affect other heavy haulers. In view of the fact that a three-judge court is required in order to enjoin an order of the Interstate Commerce Commission, 28 U.S.C.A. § 2325, this statement of position is neither daring nor particularly enlightening.

under the then-existing sections 1336 and 1398, jurisdiction to review all ICC orders was in the district courts and venue was in the district in which the party bringing the action had its residence or principal office. *See* 1964 U. S.Code Cong. & Admin.News, Vol. 2, at 3235–3236.

The effect of those jurisdiction and venue provisions often was that the court most familiar with the issues referred for decision did not hear the appeals, and, further, it remained powerless to act pending full review of the ICC orders by another court, sometimes for as long as ten years. *Id.* Thus several courts were in the position of having to determine issues which most conveniently and properly should be left to a single court. *See* Pennsylvania R. R. Co. v. United States, 1960, 363 U.S. 202, 80 S. Ct. 1131, 4 L.Ed.2d 1165. The inefficiencies of the system are quite apparent.

It was after the 1964 amendments to the jurisdiction and venue statutes that section 222(b) (2) of the Act, 49 U.S.C. A. § 322(b) (2), under which International Transport, Inc. was originally sued, was passed to allow injunctive suits between carriers. Under section 222(b), motor carriers are able to apply directly to district courts for injunctive relief against "clear and patent" attempts to circumvent regulations in the areas involved.

In passing section 222(b), Congress was careful to ensure that matters formerly within the jurisdiction of the Interstate Commerce Commission remained so. This was accomplished by limiting district court jurisdiction to "clear and patent" violations as a standard of jurisdiction rather than a measure of the required burden of proof, *see* Baggett Transp. Co. v. Hughes Transp., Inc., 8 Cir.1968, 393 F.2d 710, 716; 1965 U.S. Code Cong. & Admin.News, Vol. 2, at 2930–2931, and by providing in section 222(b) (3) that the ICC can assume primary jurisdiction of the controversy by notifying the district court that it intends to consider the matter in a proceeding before the Commission. Upon the Commission's filing of such a notice the district court must stay the judicial proceedings pending disposition of the proceeding before the Commission.

The purpose for limiting district court jurisdiction to "clear and patent" violations, and for empowering the Commission, which may appear as of right in any section 222(b) (2) action, to assume jurisdiction of a matter by notifying the district court that it intends to do so, was explicitly to provide for Commission determination of matters within its primary jurisdiction. Through these limitations Congress ensured that the Commission, rather than the courts, would initially determine important questions not clearly within regulated areas.

The instant suit requires us to decide whether the exclusive jurisdiction and venue provisions of 28 U.S.C.A. §§ 1336(b) and 1398(b), passed by Congress in 1964, are applicable to "self-help" suits between motor carriers instituted under 49 U.S.C.A. § 322(b), which was passed by Congress in 1965. That is, we must determine whether an issue regarding which the Interstate Commerce Commission gives notice to a district court pursuant to 49 U.S.C.A. § 322(b) (3), thus requiring a stay of the "self-help" suit, is "referred" to the Commission for its determination, and, if so, whether the order deciding the issue constitutes an order "arising out of such referral." We decide both questions in the affirmative.

■■ The language of the exclusive jurisdiction and venue statutes is broad enough to apply to suits to set aside ICC orders entered following the notice and stay mechanism embodied in section 322(b) (3), and nothing peculiar to section 322(b) "self-help" suits begins to persuade us that the exclusive jurisdiction and venue statutes should not apply. We note that the section 322(b) (3) notice and stay mechanism is effectually the same as the procedure for referring issues to the Commission prior to the enactment of section 322(b) (3)—the

initial determination of an issue of importance in the administration of the policies of the Interstate Commerce Act is made by the Commission. The only difference is procedural. Rather than the issue being referred to the Commission upon the court's initiative, the Commission upon its own initiative can assume responsibility for initial determination of the issue. The considerations which prompted the enactment of the exclusive jurisdiction and venue statutes, i. e., that the court most familiar with the issue initially determined by the Commission should ultimately approve or disapprove the Commission's resolution of the issue, have no relationship to the procedural nicety of whether the court or the Commission originally takes the initiative in having the issue first resolved by the Commission.[6] The inquiry necessitated by the exclusive jurisdiction and venue statutes should focus on the question whether a court familiar with an issue has deferred its proceedings pending an initial determination of the issue by the Commission. That certainly occurred here, and we thus hold that when a district court stays "self-help" proceedings pursuant to section 322(b) (3), it "refers a question or issue to the Interstate Commerce Commission for determination" within the meaning of 28 U.S.C.A. §§ 1336(b) and 1398(b).[7] Therefore, the Commission's order in its *International Transport* decision was "referred" to the Commission by the United States District Court for the Western District of Missouri, and under 28 U.S.C.A. §§ 1336(b) and 1398(b) jurisdiction and venue are proper only in that District.

■ While it is clear that the Commission order in its *International Transport* decision is one "arising out of such referral" within the meaning of the exclusive jurisdiction and venue statutes, the *Ace Doran* decision, which is broader in scope and was apparently not instituted following a 49 U.S.C.A. § 322(b) (3) notice and stay in any judicial proceedings, does not present so clear a case. While it may be possible to broadly construe the language of the exclusive jurisdiction and venue statutes to include the *Ace Doran* decision as one "arising out of such referral," since the facts of that decision are no more familiar to the District Court in Missouri than they are to us, that decision does not appear to fall within the ambit of the policies underlying exclusiveness of jurisdiction and venue under sections 1336(b) and 1398(b). We therefore hold that jurisdiction and venue of a civil action by Leonard Bros. to set aside the *Ace Doran* order is proper here in the Southern District of Florida and that we have jurisdiction of the instant action to that extent.

■ This Court is thus in the position of having before it a matter related to one under consideration by another United States District Court and one which well could be duplicated in that

---

6. Of course if the Commission could arbitrarily decide whether the judicial proceedings must be stayed there could be some basis for attaching importance to the procedural question, for it would then be more than procedural. The district court in which the notice is filed, however, presumably will, as it should, make a determination as to whether the issue is one which properly should be first determined by the Commission.

7. We disagree that a district court loses jurisdiction of an issue which is not a "clear and patent" violation of the Interstate Commerce Act simply because the term "clear and patent" is jurisdictional as it is used in 49 U.S.C.A. § 322(b) (2). The jurisdictional aspects of the term relate to the standard, rather than the existence of jurisdiction, "to indicate jurisdiction separate and apart from the ICC's primary jurisdiction." Baggett Transp. Co. v. Hughes Transp., Inc., 8 Cir. 1968, 393 F.2d 710, 716. As is normally the case with reference to the doctrine of primary jurisdiction, "Court jurisdiction is not thereby ousted, but only postponed." United States v. Philadelphia Nat'l Bank, 1963, 374 U.S. 321, 353, 83 S.Ct. 1715, 1737, 10 L.Ed.2d 915.

other Court.[8] The resolution of the proceedings in the other Court, subject to immediate review by the United States Supreme Court, will be persuasive, if not virtually dispositive of the proceedings in this Court. We therefore deem it proper that the proceedings remaining in this Court be stayed pending the outcome of the parallel litigation pending in the United States District Court for the Western District of Missouri in case No. 2136, to which we are transferring the instant action in part.

8. It is seemingly possible that another heavy hauler could institute proceedings to set aside the *Ace Doran* order in the Western District of Missouri just as Leonard Bros: Trucking Co. has done in this Court. In such an event the entire matter which has been the subject of the complaint *sub judice* would be before the other Court.