**TRI–STATE MOTOR TRANSIT CO.
et al., Plaintiffs,
and
Riss & Co., Inc., Plaintiffs
and
Interstate Commerce Commission,
Intervening Plaintiff**

v.

**C & H TRANSPORTATION CO.,
Defendant.**

**No. 17244–4.**

United States District Court,
W. D. Missouri, W. D.

April 25, 1972.

As Amended May 4, 1972.

Lawrence R. Brown and Lawrence M. Berkowitz, Kansas City, Mo., for plaintiffs.

Harry Horak, Regional Counsel, Fort Worth, Tex., John L. Kapnistos, Kansas City, Mo., for intervening plaintiff.

William M. Austin, North Kansas City, Mo., Mert Starnes, Austin, Tex., for defendant.

## FINDINGS, ORDER AND OPINION

ELMO B. HUNTER, District Judge.

This is a proceeding for an injunction under 49 U.S.C. § 322(b) (2), the so-called "self help" statute which provides any rule, regulation or order of the Commission any person injured may apply to the district court of any district where the violator operates for enforcement of that if any person operates in clear and patent violation of any provisions of the Interstate Commerce Commission Act or the law, rule, regulation or order.[1]

The statute also provides for the allowance in the Court's discretion of reasonable attorneys' fees to the prevailing party.

The two plaintiffs, Tri-State Motor Transit Co., and Riss & Co., Inc., are each common carriers by motor vehicle to whom Certificates of Convenience and Necessity have been issued by the Interstate Commerce Commission authorizing each of them to transport Class A and Class B explosives over certain prescribed routes in interstate commerce. The Interstate Commerce Commission is an intervening plaintiff.

The Defendant, C & H Transportation Co., Inc., (C & H) a corporation, is a common carrier by motor vehicle authorized to transport numerous commodities, including commodities, the transport of which, by reason of size or weight, require the use of special equipment or handling. In the exercise of its authority C & H at all relevant times has operated in the Western District of Missouri. The various routes over which C & H operates are competitive in whole or part with routes over which plaintiffs hold operating authority to transport Class A and Class B explosives.

Plaintiffs on January 21, 1969, filed their complaint for self-help seeking under 49 U.S.C. § 322(b) (2) to enjoin transportation by defendant of ammunitions weighing less than 150 pounds per individual item and bombs described as 500 and 750-pound bombs.[2] Defendant C & H filed its motion to stay the district court proceedings, alleging the subject matter of this dispute was then pending before the Interstate Commerce Commission in the proceeding entitled International Transport, Inc., Investigation and Revocation of Certificates, Docket No. MC–C 5766.[3] This motion was sustained, and in response to the invitation of this Court, the Interstate Commerce Commission assumed primary jurisdiction over the question of the authority of this defendant, among other heavy-haulers, to transport 500 and 750-pound bombs under heavy-hauler authority. C & H, along with numerous other heavy-haulers, intervened in the Interstate Commerce Commission proceedings. The Interstate Commerce Commission issued its stop order to this Court.[4] In the Com-

---

1. This is a companion-type case to Tri-State Motor Transit Co., et al. v. International Transport, Inc., 343 F.Supp. 588 (W.D.Mo.1972).

2. At the Court's suggestion and to expedite final disposition of this case, the parties have limited the commodities to be considered, but without prejudice to take up other items in any other appropriate proceeding.

3. That proceeding was before the Commission in civil action No. 2054, Tri-State Motor Transit Co., et al., v. International Transport, Inc., 343 F.Supp. 588 (W.D. Mo.1967).

4. 49 U.S.C. § 322(b) (3) provides: "In any action brought under paragraph (2) of this subsection, the Commission may notify the district court of the United States in which such action is pending

mission proceedings C & H fully supported the heavy-hauler's position that they were authorized by their heavy-hauler certificates to haul bombs of those weights and sizes.

As a result of two hearings, the Interstate Commerce Commission twice held and ruled that heavy-haulers, including C & H, "beyond question" did not possess authority to transport the mentioned bombs.[5] Thereafter the Commission withdrew its stay order, and on November 12, 1971, filed a motion for Entry of Injunction Instanter stating, " . . . it appears that an injunction should now be entered to enjoin this transportation which has been twice found by the Commission to be unlawful."

A full evidentiary hearing and trial was held on February 15, 1972.[6] From that hearing it is evident that C & H in mid-1968 began transporting 500 and 750-pound bombs, and continued to do so until March, 1970, when because of competition and other economic factors it was no longer financially feasible to do so. However, its outstanding tender continued to contain bombs, without limitation as to weight. C & H, in the latter part of 1968, on several occasions transported what probably were cannon projectiles, known as 155 millimeter projectiles, weighing some 95 to 100 pounds.[7]

The evidence differs somewhat as to how defendant developed its described Class A and B explosives business. C & H suggests it came about principally by solicitation of the Department of Defense, while plaintiffs contend and the evidence supports that it occurred

through the activities of Orville Grimes, who had been employed by an Iowa cooperative which had been engaged in the transportation of explosives but was enjoined from hauling them. It is firmly established that Mr. Grimes did solicit such business,[8] and that C & H leased and used some 150 trucks and in many instances their owners and operators were those that the Murphy Co-operative had used prior to its being enjoined from transporting Class A and B explosives. In the first six months of transporting the 500 and 750-pound bombs the income therefrom was 4 or 5% of the $37,000,-000 total revenue of C & H.

## JURISDICTION

This Court has jurisdiction of the parties and of controversies under 49 U.S.C. § 322(b) (2). Under that section no relief may be granted against C & H unless C & H operated in clear and patent violation of its certificated authority. As stated in Baggett Transportation Co. v. Hughes Transportation, Inc., 393 F.2d 710 (8 Cir. 1968), in discussing § 322(b) (2), "Not only is a remedy provided therein, the words 'clear and patent' are judiciously used to indicate jurisdiction separate and apart from ICC's primary jurisdiction. Thus the House Report notes that, ' * * * the words 'clear and patent' are used and are intended as a standard of jurisdiction rather than as a measure of the required burden of proof.' 1965 U.S.Code Cong. & Adm.News, Vol. 2 at p. 2931. In order to regain primary jurisdiction of the controversy and also to prevent the use of § 322(b) (2) to harass carriers

that it intends to consider the matter in a proceeding before the Commission. Upon the filing of such a notice the court shall stay further action pending disposition of the proceeding before the Commission."

5. The I.C.C. decision was reviewed in a Three-Judge Court proceeding and affirmed. See International Transport, Inc. et al., v. United States of America, et al., 343 F.Supp. 588 (W.D.Mo.1972).

6. At the request of plaintiffs and to conform the proof to the pleadings, the com-

plaint of plaintiffs is deemed refiled as a supplemental complaint as of February 15, 1972. See, Civ.Rule 15.

7. In spite of some uncertainty, the evidence permits this finding. However, in view of the uncertainty, and the insignificance of the amount involved, no further consideration will be given to these items.

8. See Riss & Co., Inc., et al., v. Murphy Cooperative, et al., (S.D.Iowa 1968).

legitimately operating, the ICC may take jurisdiction of the matter under § 322(b)(3) and stay further action in the District Court." And as stated in Leonard Brothers Trucking Co. v. United States, 301 F.Supp. 893, 898 n. 7 (S.D.Fla. 1969), "As is normally the case with reference to the doctrine of primary jurisdiction, 'Court jurisdiction is not thereby ousted, but is only postponed.' United States v. Philadelphia Nat'l Bank, 1963, 374 U.S. 321, 353, 83 S.Ct. 1715, 1737, 10 L.Ed.2d 915."

### THE QUESTION OF CLEAR AND PATENT VIOLATION

■ On April 10, 1959, if not earlier, as a result of the Commission's decision in W. J. Dillner Transfer Co., Investigation of Operations, 79 M.C.C. 335, the heavy-haulers were clearly on notice that in bundling, aggregating or palletizing, the general rule of construction is that it is the individual commodity itself that is the pertinent consideration as respects a carrier's size and weight authority, unless the inherent nature of the commodity itself requires it to be bundled or palletized for its own protection and that even in that limited circumstance it is the minimum bundle so required that must be looked to rather than the actual bundle tendered by the shipper.

■ In Baggett Transportation Company v. Hughes Transportation, Inc., 393 F.2d 710, 715–716 (8 Cir. 1968) it is stated:

The Congressional concern with eliminating delay which prevents innocent parties from securing prompt and effective protection was manifest in the 1965 amendment. Thus, in discussing the amendment increasing the civil penalties, the House Report appropriately notes that: "Under existing law, procedures for dealing with certain motor carrier violations are often slow and cumbersome, and frequently ineffective." 1965 U.S. Code Cong. & Adm.News, Vol. 2, at p. 2929. Certainly one way of securing prompt and effective protection for innocent persons injured by the clearly illegal operations of other carriers is to give the injured persons the right to apply for injunctive relief independently of any Commission proceedings. § 322(b)(2) accomplishes this by allowing injured persons to enjoin "clear and patent" violations.

The evidence in the instant case is such that it is the Court's finding that the mentioned bombs transported by C & H did not inherently require palletization or bundling, and that their transportation was a clear and patent violation under 49 U.S.C., § 322(b)(2) of C & H's certificated authority in violation of the provisions of §§ 303(c) and 306 of the Interstate Commerce Act.[9] In so finding this Court adopts the reasoning, criteria and guidelines for making such finding as set out in the Three-Judge review and in the two Commission's hearings on this same issue and hauling by International in which C & H was an intervening party. See, International Transport, Inc., et al. v. United States of America and Interstate Commerce Commission, 337 F. Supp. 985 (W.D.Mo.1972); International Transport, Inc., Investigation, No. MC–C 5766, 108 M.C.C. 275 and ibid. MC–C 5766. In that Three-Judge Decision it was summarized thusly: "The said guidelines, *all of which, by way of emphasis, have been developed in prior cases,* may be described as follows: (1) the basic characteristics, if any, of the commodity which occasion the use of special equipment; (2) prevailing industry practice with regard to its handling; (3) the manner in which it or analogous commodities have historically been shipped; and (4) its traditional sphere of carriage."

■ It would serve only to prolong this opinion to detail all the evidence

9. The detailed reasoning for such findings is set out in International Transport, Inc., et al. v. United States of America, et al., 337 F.Supp. 985 (W.D. Mo.1972).

applicable to each of these guidelines for interpreting a certificate such as C & H's. The history of the manual handling of bombs of this general type, size and weight, including the rolling of them by hand both in loading them for transportation and unloading them is part of the evidence in this case.[10] The reasonable susceptibility of the individual bombs to such manual handling, both past and current, and without any need of special equipment was established. The evidence before us viewed in the light of the above adopted guidelines fully supports the finding that the transportation by C & H of the 500 and 750-pound bombs was and is clearly and patently outside the scope of its heavy-hauler authority and in violation of the provisions of Sections 303(c) and 306 of the Interstate Commerce Act.

The history of munitions transportation and heavy-hauler authority is set out in considerable detail in the two mentioned Interstate Commerce Commission hearings and the Three-Judge Court review of them and further confirms the clear and patent nature of C & H's violation. That history demonstrates that prior to 1966 no heavy-hauler, including C & H had shown any interest in hauling such Class A and B explosives, and that historically transportation of Class A and B explosives had been considered to generally belong to those possessing Class A and Class B explosives' certificates or other specific authority to so haul. Certainly, heavy haulers, as such, historically had never possessed general authority to haul Class A and B explosives. See, Tri-State Motor Transit Company, et al. v. International Transport Inc., 588 F.Supp. 343 (W.D.Mo.1972); Classifications Case, 2 M.C.C. 703 (1937);

Osborne Common Carrier Application— Heavy Materials, 37 M.C.C. 633; Ace Doran Hauling & Rigging Co., Investigation of Operations, 108 M.C.C. 717 (April 16, 1969). Classification of Motor Carriers of Property, 2 M.C.C. 703 (1937). In Hughes Transportation Company, Inc., Extension, 107 M.C.C. 207 (1969) the Commission expressed it thusly: "Moreover, the *Moss* decision (103 M.C.C. 91) does not authorize the incursions by heavy-haulers into numerous specialized fields as chemical and explosives transportation."

Consistent with the history of heavy-hauler authority and of Class A and Class B explosives transportation, the Interstate Commerce Commission on December 31, 1968, ruled that heavy-haulers, such as C & H, did not possess authority to transport 500 and 750-pound bombs.[11] However, C & H, as well as other heavy-haulers, deemed that decision as not final, took the risk that it could upset that decision and continued its transportation of these items until March, 1970, when it ceased hauling them for economic reasons but did not remove them from its outstanding tender.

It should have been clear to C & H as early as April 10, 1959, from the *Dillner* decision [12] that for the purpose of testing its heavy-hauler authority in the Class A and B munitions field, C & H could not resort to the tendered items as palletized, for weight and size, absent such palletization being inherently required by the items involved. Certainly on December 31, 1968, when the I.C.C. report in International was made it should have been crystal clear to C & H that to continue to transport the 500 and 750-pound bombs was a transportation

---

10. The transcripts of the evidence before the Interstate Commerce Commission on the subject are in evidence in this proceeding as well as other evidence on this subject.

11. C & H was an intervenor in that action. Wee International Transport, Inc., Investigation, No. MC–C 5766, affirmed by a Three-Judge Court in International

Transport, Inc., et al., v. United States of America, et al., 337 F.Supp. 985 (W.D. Mo.1972).

12. W. J. Dillner Transfer Company v. I.C.C., 193 F.Supp. 823 (W.D.Penn.1961), affirmed in Dillner Transfer Co. v. United States, 368 U.S. 6, 82 S.Ct. 16, 7 L.Ed.2d 16 (1961).

clearly and patently beyond its certificated authority as a heavy-hauler.

C & H is not favorably situated to contend now that the clear and patent statutory requirement has not been fully met both in letter and in spirit. Not only has the Interstate Commerce Commission not been interfered with by this self-help suit but on the contrary, its expertise has been timely and properly obtained, and followed. It is noteworthy that the Interstate Commerce Commission has intervened in this action to become a party plaintiff and to support the issuance of an injunction against C & H.

## THE INJUNCTION QUESTION

■ The decision as to whether or not to issue an injunction rests to a large extent in the sound discretion of the trial court, and requires careful consideration of all salient facts as well as the applicable equitable principles. Guidance for the exercise of sound discretion is found in such cases as Farmer v. Arabian American Oil Co., 379 U.S. 227, 85 S.Ct. 411, 13 L.Ed.2d 248 (1964); Petroleum Exploration v. Kentucky Public Service Commission, 304 U.S. 209, 58 S.Ct. 834, 82 L.Ed. 1294 and cases cited therein.

■ Cessation of violation whether before or after the initiation of the suit does not bar the issuance of the injunction, nor render the case moot. Hecht Co. v. Bowles, 321 U.S. 321, 64 S.Ct. 587, 88 L.Ed. 754 (1944). United States v. Article of Drug, etc., 362 F.2d 923 (C.C.A.3, 1966). The Court may act on the evidence before it at the time it decides the merits of the case.[13] Ohio Oil Co. v. Conway, 279 U.S. 813, 49 S.Ct. 256, 73 L.Ed. 972 (1929). Muni-

tions Carriers Conference, Inc. v. American Farm Lines, 440 F.2d 944 (C.C.A. 10, 1971); United States v. W. T. Grant Co., 345 U.S. 629, 73 S.Ct. 894, 97 L.Ed. 1303 (1953).

C & H ceased to haul the mentioned bombs some fifteen months after the Commission had ruled that heavy-hauler authority did not authorize their transportation. C & H stopped its hauling of them only when because of price changes it deemed it unprofitable to do so. Its offer in its tender to haul all explosives without limitation as to size, weight or inherent requirement of palletization was still outstanding at trial time, insofar as the record shows. Thus, it appears obvious that economic factors, rather than any other consideration, were the primary reason for cessation of transportation, and, of course, the economic factors involved are variable, subject to change, and do not provide any assurance that future illegal hauling will not occur.[14]

■ ■ Absent an injunction, plaintiffs are totally devoid of any remedy at law for the financial damages they have obviously suffered and will again suffer if the illegal transportation is resumed.[15] Under the self-help statute plaintiffs are not entitled to any of the damages they suffered by reason of the unlawful operations. However, if an injunction is granted and is violated, plaintiffs in a contempt proceeding may recover damages suffered by reason of diversion of traffic from them in violation of the terms of the injunction. See Munitions Carriers Conference, Inc. v. American Farm Lines, 440 F.2d 944 (C.C.A.10, 1971). Certainly if a permanent injunction were denied there would be no form of restraint as to this defendant. It is

13. The parties and the Court have treated the issues as continuing to the date of trial. The Court considers the pleadings to be amended accordingly to conform to the proof. See, Rule 15, F.R.Civ.P.

14. There is evidence that as recently as the time of this trial on February 14, 1972, C & H had been tendered loads of 500 and 750-pound bombs to haul.

15. The Court finds that as a result of C & H's illegal transportation of Class A and Class B bombs, the plaintiffs lost profits that would otherwise have accrued to them had not C & H and others wrongfully diverted substantial 500 and 750-pound bomb hauling business from plaintiffs. Thus plaintiffs are "injured" parties under 49 U.S.C. § 322(b) (2).

currently not bound by any Commission injunctive order.

Should C & H in the future again transport the type of bombs involved in this case, plaintiffs would need to commence a new proceeding under the self-help statute, or the Commission could commence its own proceedings pursuant to 49 U.S.C., § 322(b) (1). Either action at best could result only in the very kind of injunction sought here. Again, plaintiffs would have no remedy for their financial losses suffered by such future illegal transportation.

■ In view of the practicalities of the situation, namely, the absence of any legal remedy against a violator, for damages reasonably certain to occur to a carrier whose business is diverted away; the temptation inspired by the very large profits obtainable if transportation of bombs again becomes a large business, or if the economic variables otherwise change and appeal to C & H as sufficiently favorable; any and all of which could happen quickly, there is real need of and justification for the issuance of a permanent injunction to protect plaintiffs in the future and to give them a legal means to obtain money damages in the event of a future violation.

## ATTORNEYS' FEES

■ The allowance of an attorney's fee is discretionary. 49 U.S.C., § 322 (b) (2).[16] Obviously, by granting statutory authority to district courts to award reasonable attorneys' fees Congress had in mind that if successful plaintiffs routinely had to bear their own attorneys' fees and, as here, were unable to obtain any money damages through lack of adequate legal remedy it would be inequitable and would discourage some aggrieved parties from bringing appropriate self-help actions. Thus, the allowance of attorneys' fees is discretionary and they should be al-

lowed when the equities disclose they are merited. Cf. Newman v. Piggie Park Enterprises, 390 U.S. 400, 88 S.Ct. 964, 19 L.Ed.2d 1263 (1968). According to the credible evidence the amount of attorneys' fees properly allowable for legal service necessarily performed in this self-help suit is $4,557.00 which plaintiffs previously have paid their attorneys. Plaintiffs are hereby allowed that sum.

■ Plaintiffs also desire attorneys' fees for legal services performed before the Commission and while C & H was an intervenor before the Commission in the International case, supra. However, Title 49 U.S.C., § 322(b) (2) which is the only authority for granting attorneys' fees in the instant case reasonably interpreted does not provide for such fees. While it would encourage those using the self-help statute to be provided attorneys' fees, for services rendered while the Interstate Commerce Commission has the subject of the suit under investigation, Congress, as yet, has made no such provision. In the absence of such statutory authority, this Court declines to award such fees.

## THE INJUNCTION

Defendant C & H Transportation Co., including its officers, employees, agents and representatives acting on its behalf, are hereby restrained and enjoined from transporting in interstate commerce and from participating in the transportation in interstate commerce under size and weight or so-called heavy-hauler authority by motor vehicle on public highways for compensation, bombs of an approximate weight of 500 pounds and 750 pounds whether palletized or unpalletized, unless certificated authority is first obtained from the Interstate Commerce Commission authorizing such transportation or unless changes in the design or structure of such bombs inherently re-

16. 49 U.S.C., § 322(b) (2) : "The party who or which prevails in any such action may, in the discretion of the court, recover reasonable attorney's fees to be fixed by the court, in addition to any costs allowable under the Federal Rules of Civil Procedure, . . . ."

quires palletization or which prevents manual handling of such bombs as they are or as they may be slightly modified to permit manual handling of them.

It is so ordered.