## INTERSTATE COMMERCE COMMISSION
## v. ELLIOTT et al.
### Civ. No. 3215.

United States District Court
E. D. Oklahoma.

April 29, 1953.

Edwin Langley, U. S. Atty., Muskogee, Okl., Bernard H. English, Atty., Interstate Commerce Commission, Fort Worth, Tex., for Interstate Commerce Commission.

R. M. Mountcastle, Muskogee, Okl., R. E. Kidwell (of Callaway & Reed), Dallas, Tex., for defendants.

RICE, Chief Judge.

This cause came on for trial on January 26, 1953, the plaintiff appearing by its attorney, Bernard H. English and Edwin Langley, United States Attorney for the Eastern District of Oklahoma, the defendant, Clifford C. Elliott, appearing by his attorney R. M. Mountcastle, and the defendant, Southern Express, Inc., appearing by its attorney, R. E. Kidwell. After hearing the evidence and arguments of counsel the Court took the case under advisement, and now on this 29th day of April, 1953, enters its Findings of Fact and Conclusions of Law:

### Findings of Fact.

1. This action is brought by the Interstate Commerce Commission, hereinafter referred to as Commission, in the Eastern District of Oklahoma, to enjoin the defendants Clifford C. Elliott, doing business as Elliott Freight Lines, of Muskogee, Oklahoma, and Southern Express, Inc., of Dallas, Texas, both common carriers by motor vehicle engaged in the transportation of property in interstate commerce, from conducting certain interstate operations over the public highways, the details of which will be hereinafter described, the operations complained of being conducted over U. S. Highway 69 between Atoka, Oklahoma, and Miami, Oklahoma. The jurisdiction of this Court is invoked under the provisions of Part II of the Interstate Commerce Act, 49 U.S.C.A. § 322(b).

2. The defendant Elliott does not have a certificate of public convenience and necessity issued by the Interstate Commerce Commission, but operates as a common carrier of property by motor vehicle between Colbert, Oklahoma, and Miami, Oklahoma, over U. S. Highway 69 via Atoka, Muskogee and Vinita, Oklahoma, as well as over other routes not material hereto, under authority of a Class A Intrastate Certificate of Public Convenience and Necessity issued to him by the Corporation Commission of the State of Oklahoma, and engages in transportation in interstate com-

584

merce over such routes pursuant to the partial exemption of the second proviso of Section 206(a) of the Interstate Commerce Act, 49 U.S.C.A. § 306(a). The Commission originally challenged Elliott's authority to operate over the entire length of his route, above-described, but since the filing of the suit the Oklahoma Commission has consolidated authority issued by it to Elliott into a single certificate and the plaintiff no longer questions his authority to operate over the entire length of his route in interstate commerce. Elliott has on file with the Commission evidence of insurance and rates covering all operations which he is authorized to perform in interstate commerce.

3. The defendant, Southern Express, Inc., operates as a common carrier of property by motor vehicle between Dallas, Texas, and Tulsa, Oklahoma, over U. S. Highway 75 via Atoka, Oklahoma, and between Tulsa, Oklahoma, and St. Louis, Missouri, over U. S. Highway 66 via Vinita and Miami, Oklahoma, as well as over other routes not material hereto, under authority of certificates of public convenience and necessity issued by the Interstate Commerce Commission. It does not have authority to operate over that portion of U. S. Highway 69 between Atoka and its junction with U. S. Highway 66 about 4 miles west of Vinita.

4. On or about August 27, 1951, Southern Express and Elliott entered into an agreement, in writing, which provides that Elliott move vehicles of Southern Express over U. S. Highway 69 between Atoka and Vinita, agreeing to receive at Atoka vehicles brought to Atoka by Southern Express from places south of Atoka, and to redeliver such vehicles to Southern Express at Vinita where Southern Express would receive and transport them on to points north of Vinita, and similarly, to receive from Southern Express at Vinita vehicles which Southern Express wished to have transported over U. S. Highway 69 to Atoka, and then redeliver them to Southern Express which would then move them to places south of Atoka. This agreement remained in effect until on or about January 12, 1952, when the northern

point of interchange was moved from Vinita to Miami, Oklahoma, at which time the agreement was rewritten to provide for interchange at Miami instead of at Vinita.

5. The parties filed a stipulation of agreed facts, wherein they incorporated the contract of January 12, 1952, under which defendants carry on the operations in question, which is herein incorporated by reference the same as if set out fully herein.

6. The method of operations as outlined in the present contract and in its predecessor of August 27, 1951, is substantially the same. The initial agreement provided that the division of through charges on shipments moving over the joint route of the defendants shall be computed as follows:

"On through freight moving between points north of Vinita, on the one hand, and south of Atoka on the other, Elliott shall receive eight per cent (8%) of the applicable through charges, but with a minimum of $44.50 per vehicle interchanged under this agreement at Vinita and Atoka and operated by him between Vinita and Atoka."

In the present agreement the above provision was eliminated and it was provided that:

"Division of through charges shall be computed as agreed upon by the parties from time to time, or as may be fixed by lawful public authority."

7. The operations under the interchange agreement are as follows: Southern Express and Elliott employ two joint employees at Atoka where a joint office, used only for the interchange, is located in the rear of a filing station. At Miami, Southern Express maintains a terminal and agent, and Elliott has a full time employee with office space in said terminal to supervise the interchange on Elliott's behalf. At Miami and at Atoka Elliott maintains a "sign-in and sign-out sheet" upon which drivers arriving from Atoka sign in and drivers departing to Atoka sign out and vice versa. Southern Express maintains at both interchange points a similar "register

of arrivals and departures" upon which drivers sign in and sign out. There is an "equipment interchange receipt and inspection report" for execution on behalf of the respective carrier at each interchange point which contains a form of inspection report and certification.

When Southern Express trucks arrive from the north in Miami, which Southern Express wants to send over the interchange route, Elliott's employee is given a manifest by the driver which lists the shipments in the load and a sealed envelope containing a copy of the freight bills for each shipment in the load. Elliott's employee inspects the vehicle and gives Southern Express' agent a receipt and inspection report for the vehicle and supplies the driver with an Elliott time card upon which to report for pay the mileage driven by him. The driver signs in on the Southern Express register and then signs out on Elliott's register and departs for Atoka. Upon arrival at Atoka the driver reports to the joint agent on duty at the established truck stop and signs in on Elliott's register, turns in his Elliott time card, turns over the equipment to the joint agent who inspects it and executes a return receipt acknowledging receipt by Southern Express of the vehicle from Elliott. The driver then signs out on the Southern Express register and proceeds to Dallas. The north-bound operation is conducted similarly in reverse.

The drivers turn in their Elliott time cards to the Elliott employee upon arrival at Miami and to the joint employee upon arrival at Atoka, from which places they are sent to A. C. Buchanan, timekeeper and pay master for Southern Express in Dallas. Elliott pays Buchanan $50 per month to write checks. Elliott has established a special account in a Muskogee bank on which Buchanan draws checks to pay his own salary, the drivers' wages for their runs on the interchange (at the same time he writes a check on Southern Express for the drivers' wages from Southern Express), one-half the salary of each of the joint employees at Atoka and Southern Express the amount due it for mileage of the vehicles operated between Atoka and Mi-

ami under the interchange agreement. The checks indicate the amount of income tax withheld and Social Security deductions, but Elliott makes the returns and reports on these. All of the drivers used in the interchange are regular employees of Southern Express.

8. Southern Express currently pays Elliott $56 for each vehicle handled under the interchange agreement. This is a division of through charges between the carriers for the transportation of shipments over the through route.

9. Truck tractors of vehicles of Southern Express used in the operations have painted on both sides a notice, to wit: "Operated over U. S. Hy. 69 between Miami and Atoka, Okla., by Elliott Freight Lines, I.C.C. 97954."

10. The Court finds that the carrier operations being carried on over Elliott's route between Atoka and Miami under the interchange agreement are under the control and direction of the employees of Southern Express.

11. The bills of lading used by Southern Express for the interchange operations are not through bills of lading which show the defendant Elliott as a participating, or connecting, carrier.

### Conclusions of Law.

1. This Court has jurisdiction. 49 U. S.C.A. § 322(b).

2. 49 U.S.C.A. § 306(a)(1) provides, with certain exceptions, that no common carrier by motor vehicle shall engage in any interstate or foreign operation on a public highway, unless there is in force with respect to such carrier a certificate of public convenience and necessity. The first proviso of the above section is the grandfather clause with which we are not concerned herein. The second proviso provides for partial exemption for those carriers lawfully engaged in an operation solely within a state provided that said carrier has a certificate or other authority from the state to so operate.

3. 49 U.S.C.A. § 316(c) provides that common carriers by motor vehicle may establish reasonable through routes and joint rates with other such carriers, or with

586

other common carriers. In the case of such joint rates it shall be the duty of the carrier parties thereto to establish just and reasonable regulations and just, reasonable and equitable divisions of said rates.

4. Under the two foregoing provisions of Congress, Southern Express and Elliott were authorized to enter into a contract whereby Elliott would transport over its line from Miami, Oklahoma, to Atoka, Oklahoma, motor vehicles of Southern Express. The question presented herein is whether or not the contract entered into between them and the manner in which the operations have been conducted amount to a valid and legal interchange of equipment.

5. For an interchange to be lawful "the common carrier under whose rights the interchanged equipment is operated must assume full responsibility for the direction, conduct, condition and operation of such equipment while it is in its possession." In determining this question the form of the contract is not necessarily controlling. The manner in which the operations are conducted under the contract should be considered in determining the legality of the interchange. Gerard Motor Express, Inc., Common Carrier Application, 2 M.C.C. 271, Division 5 of the Commission; Short Way Lines, Inc., Extension-Bryan-Fort Wayne, 27 M.C.C. 510. See also A. W. Stickle & Co. v. I.C.C., 10 Cir., 128 F.2d 155, and also United States v. Steffke, D.C., 36 F.Supp. 257.

6. The Court concludes under the evidence that the operation involved is in truth and in fact the operation of Southern Express; that Southern Express retains the actual control of the vehicles and that Elliott's chief participation is in collecting a certain part of the revenue as a result of the operation. This is an unlawful interchange, and an injunction should issue.

Attorneys for plaintiff will prepare an appropriate decree in conformity with the foregoing Findings of Fact and Conclusions of Law and present the same to the Court for signing and entry at Muskogee, Oklahoma, at 9:30 a. m., on the 8th day of May, 1953.