**TRI–STATE MOTOR TRANSIT
CO. et al., Plaintiffs,**

**Interstate Commerce Commission,
Intervening Plaintiff**

v.

**H. J. JEFFRIES TRUCK LINES, INC.,
Defendant.**

**No. 2149.**

United States District Court,
W. D. Missouri,
Southwestern Division.

April 26, 1972.

Stinson, Mag, Thomson, McEvers & Fizzell, Lawrence R. Brown, Kansas City, Mo., for plaintiffs.

Harry Horak, Reg. Counsel, I. C. C., Ft. Worth, Tex., for intervening plaintiff.

Karl Schmidt, Kansas City, Mo., for defendant.

## FINDINGS, ORDER AND OPINION

ELMO B. HUNTER, District Judge.

This is a proceeding for an injunction under 49 U.S.C., § 322(b) (2), the so-called "self help" statute which provides that if any person operates in clear and patent violation of any provisions of the Interstate Commerce Commission Act or any rule, regulation or order of that Commission any person injured may apply to the district where the violator operates for the enforcement of the law, rule, regulation or order.[1] The statute also provides for allowance in the Court's discretion of reasonable attorneys' fees to the prevailing party.

The three plaintiffs are each common carriers by motor vehicle to whom certificates of convenience and necessity have been issued by the Interstate Commerce Commission authorizing plaintiffs to transport, among other things, Class A and Class B explosives over certain prescribed routes in interstate commerce. The Interstate Commerce Commission appears as an intervening plaintiff.

Defendant, H. J. Jeffries Truck Lines, Inc., (Jeffries), an Oklahoma corporation, is a common carrier by motor vehicle to whom certificates of convenience and necessity have been issued by the Interstate Commerce Commission authorizing Jeffries to transport, among other items, commodities, the transportation of which, by reason of size or weight, requires the use of special equipment or special handling, over certain prescribed routes in interstate com-

1. This is a companion-type case to Tri-State Motor Transit Co. v. International Transport, Inc., 343 F.Supp. 588 (W.D. Mo.1972); Tri-State Motor Transit Co. v. C and H Transportation Co., 347 F.Supp. 879 (W.D.Mo.1972).

merce. In the exercise of its authority Jeffries at all relevant times has operated in the Western District of Missouri. The various routes over which Jeffries transported the items in controversy are competitive, in whole or in part, with routes over which plaintiffs hold operating authority to transport such items.

## BACKGROUND OF THE DISPUTED TRANSPORTATION

In May or June, 1967, Jeffries commenced transporting 500 and 750-pound bombs.[2] It was still hauling these bombs in the period of January 1, 1971, through December 31, 1971. As late as January 25, 1972, it "reasonably anticipated continuing to do so." Its witness testified it ceased hauling the bombs on January 29, 1972, and further stated Jeffries did not intend to haul them until it obtains further interpretation from the Interstate Commerce Commission.[3]

Along with its bomb hauling, Jeffries also during the same period hauled ammunition and other Class A or Class B explosives weighing much less than 150 pounds per unit and often weighing much less than 150 pounds even if boxed.[4] All mentioned transportation was for the Department of Defense and was obtained in competition with plaintiffs.

Prior to commencing the described transportation, Jeffries filed with the Interstate Commerce Commission a tender, holding itelf out to transport all items described therein at the rates set out. Included in the tender is a wide range of ammunition and bombs (Class A and Class B explosives) with no stated limitation as to weight or size.

On December 13, 1968, plaintiffs filed in the United States District Court of Kansas their complaint, seeking to enjoin, among other items, the transportation of 500 and 750-pound bombs and ammunition for cannon. On August 4, 1967, pursuant to 28 U.S.C. § 1404(a) Judge Stanley transferred the case to the undersigned Court.

## THE PRIOR RELATED LITIGATION

On May 16, 1967, International Transport, Inc., a North Dakota corporation, commenced the transportation of 500 and 750-pound bombs and certain small ammunition, all Class A or Class B explosives. International was the first heavy-hauler to transport such items in reliance upon size and weight authority. These plaintiffs immediately brought suit in the Western District of Missouri to enjoin such transportation by International. A temporary injunction was issued prohibiting the transportation of certain ammunition of a weight of less than 150 pounds, and the controversy over 500 and 750-pound bombs was referred to the Interstate Commerce Commission for its primary consideration. See, International Transport, Inc., Investigation, No. MC–C 5766, 108 M.C. C. 275. While many other heavy-haulers intervened in the Interstate Commerce

---

2. These bombs admittedly are Class A or Class B explosives.

3. Jeffries is a "grandfather carrier", having operated prior to 1935. It and only one other carrier have what it terms a unique provision in its certificate which it states gives it authority to haul parts of size and weight commodities in unrestricted shipments. Its certificate reads in part: "Parts or commodities authorized in 4C, either when incidental to the transportation of such commodities, or when transported as separate and unrestricted shipments." Jeffries hopes this authority will permit it to haul bombs if they have fins as fully assembled.

4. Such items apparently include 155 mm ammunition weighing less than 100 pounds; 105 mm ammunition weighing 80 or less pounds; 75 mm ammunition packaged two rounds per box, each round weighing 35 pounds; 37 mm ammunition weighing 6 pounds per shell and cannon projectiles weighing 52, 57 and 59 pounds. There is no evidence that the inherent nature of any of these items required paletizing or grouping. Admittedly, this transportation was in competition with that of plaintiffs.

Commission proceeding, Jeffries did not, but did keep informed as to the litigation and its outcome.

The referenced matter remained before the Interstate Commerce Commission for approximately two years, during which period after extensive hearings it twice decided and ruled that heavy-hauler authority "beyond question" did not authorize the transportation of 500 and 750-pound bombs, and that their transportation by International was illegal.[5] The Interstate Commerce Commission rulings were affirmed by the United States District Court for the Western District of Missouri in a three-judge proceeding. See International Transport, Inc. v. United States, D.C., 337 F. Supp. 985 (1972).

### THE PRESENT CASE

On February 14, 1972, a full and final evidentiary hearing was held in the instant case. In order to expedite final disposition of the cause, the parties, with the Court's approval, limited the commodities to be considered to ammunition weighing less than 150 pounds per individual item and to bombs of approximately 500 and 750 pounds.

### JURISDICTION

This Court has jurisdiction of the parties and of controversies under 49 U.S.C. § 322(b) (2). Under that section no relief may be granted against Jeffries unless Jeffries operated in clear and patent violation of its certificated authority. As stated in Baggett Transportation Co. v. Hughes Transportation, Inc., 393 F.2d 710, 716 (8 Cir. 1968) in discussing Section 322(b) (2), "Not only is a remedy provided therein, the words 'clear and patent' are judiciously used to indicate jurisdiction separate and apart from the ICC's primary jurisdiction. Thus the

House Report notes that, ' * * * the words "clear and patent" are used and are intended as a standard of jurisdiction rather than as a measure of the required burden of proof.' 1965 U.S.Code Cong. & Adm.News, Vol. 2 at p. 2931. In order to regain primary jurisdiction of the controversy and also to prevent the use of § 322(b) (2) to harass carriers legitimately operating, the ICC may take jurisdiction of the matter under § 322(b) (3) and stay further action in the District Court." And as stated in Leonard Brothers Trucking Co. v. United States, 301 F.Supp. 893, 898 n. 7 (S.C.Fla. 1969), "As is normally the case with reference to the doctrine of primary jurisdiction, 'Court jurisdiction is not thereby ousted, but is only postponed.' United States v. Philadelphia Nat'l Bank, 1963, 374 U.S. 321, 353, 83 S.Ct. 1715, 1737, 10 L.Ed.2d 915."

### THE QUESTION OF CLEAR AND PATENT VIOLATION

From the two hearings in this case, it is established that prior to May 17, 1967, no heavy-hauler in reliance on size and weight authority had attempted to haul Class A or Class B explosives. On that date, perhaps encouraged by the Moss decision,[6] and by the profits attainable, International energetically entered the hauling of Class A and Class B explosives.[7] Quickly, Jeffries also commenced transporting such explosives in reliance on its heavy-hauler authority, as did numerous other heavy-haulers. To a great extent as to the majority of such items, they were testing their size and weight authority by the items in the packaged or palletized form in which they were tendered by the shipper regardless of whether the inherent nature of the shipped items "required" boxing or palletizing.

---

5. See International Transport, Inc., Investigation, No. MC–C 5766, 108 M.C.C. 271 decided December 31, 1968, and ibid, MC–C 5766 decided October 26, 1971.

6. Moss Trucking Co., Inc., Investigation of Operations, 103 M.C.C. 91 (1966).

7. See International Transport, Inc., et al., v. United States, et al., 337 F.Supp. 985 (W.D.Mo.1972).

■ However, on April 10, 1959, if not earlier, as a result of the Interstate Commerce Commission's decision in W. J. Dillner Transfer Co., Investigation of Operations, 79 M.C.C. 335, the heavy-haulers were clearly on notice that in bundling, aggregating or palletizing, the general rule of construction is that it is the individual commodity itself that is the pertinent consideration as respects a carrier's size and weight authority, unless the inherent nature of the commodity itself requires it to be bundled or palletized for its own protection, and that even in that limited circumstance it is the minimum bundle so required that must be looked to rather than the actual bundle tendered by the shipper.[8] As noted in Ace Doran Hauling & Rigging Co., Investigation, 108 M.C.C. at 726 (1969): "Following favorable decisions upon judicial review, in W. J. Dillner Transfer Company v. I. C. C., 193 F. Supp. 823 (1961), affirmed in Dillner Transfer Co. v. United States, 368 U.S. 6, [82 S.Ct. 16, 7 L.Ed.2d 16] (1961), the Commission and the motor carrier industry came to rely on the *Dillner* standards, and these criteria were utilized to determine the status under heavy-hauler authority of a wide scope and variety of commodities." Certainly, on December 31, 1968, when the Interstate Commerce Commission report in International was made, it should have been crystal clear to Jeffries that for the purpose of testing its heavy-hauler authority in the Class A and Class B explosives field, it could not resort to the tendered items as palletized, for weight and size, absent such palletization being inherently required by the items involved.

■ The evidence in this case is such that it is the Court's finding that the above-mentioned and described ammunition and explosives transported by Jeffries and weighing less than 150 pounds per commodity did not inherently require palletization or bundling and is easily handled in loading, unloading, and otherwise, by hand.[9] No special equipment is required for that purpose. Additionally, it is the Court's finding that the mentioned 500 and 750-pound bombs transported by Jeffries did not inherently require palletization or bundling, and that no special equipment is "required" for the loading or unloading of the individual bomb. Finally, it is the Court's finding that the mentioned transportation of the commodities by Jeffries was a clear and patent violation under 49 U.S.C., § 322(b) (2) of Jeffries certificated authority in violation of 49 U.S.C., §§ 303(c) and 306 requiring a certificate which authorizes the particular transportation engaged in.

■ In making the above "clear and patent" finding, this Court adopts the reasoning, criteria and guidelines for making such a finding, as set out in the three-judge review and in the two Interstate Commerce Commission hearings and reports on this same kind of issue in *International*. See International Transport, Inc., et al. v. United States of America, et al., 337 F.Supp. 985, (W.D.Mo.1972); International Transport, Inc., Investigation, No. MC–C 5766, 108 M.C.C. 275, decided December 31, 1968, and ibid, MC–C 5766 decided October 26, 1971. In the Three-Judge Decision, supra, it was summarized thusly: "The said guidelines, *all of which, by way of emphasis, have been developed in*

---

8. Otherwise, the Commission felt it would lose orderly control of the motor carriers' authority; for each shipper by his own choice or practice could arrange his tender to give to heavy-haulers authority to transport items clearly never intended for them to transport. Such things as books, pencils, feathers, etc., could be so aggregated as to present a weight and size situation.

9. In Ace Doran Hauling & Rigging Co., Investigation, 108 M.C.C. at 723 (1969) the Interstate Commerce Commission stated, "For one thing these [prior] cases show little in the way of heavy-hauler interest in objects which weigh less than 200 pounds, and, where the issue did arise, manual lifting appears universally to have been considered a reasonably practical method of handling such items."

*prior cases*, may be described as follows: (1) the basic characteristics, if any, of the commodity which occasion the use of special equipment; (2) prevailing industry practice with regard to its handling; (3) the manner in which it or analogous commodities have historically been shipped; and (4) its traditional sphere of carriage."

It is patently evident from what has been said that the described 150-pound or less items transported by Jeffries, tested by these guidelines places their transportation clearly and patently beyond its certificated authority as a heavy-hauler.

As to the 500 and 750-pound bombs, it would serve only to prolong this opinion to detail all the evidence applicable to each of the guidelines for interpreting and applying a certificate such as Jeffries. The history of the manual handling of such bombs of this general type, size and weight, including the rolling of them by hand, both in loading them for transportation and in unloading them, is part of the evidence in this case.[10] The reasonable susceptibility of the individual bombs to such manual handling, both past and current, and without any need of special equipment was established. The history of their shipping as not having included heavy-haulers prior to 1967 is undisputed. Thus, the evidence, viewed in the light of the mentioned guidelines fully supports the finding that the transportation of the 500 and 750-pound bombs by Jeffries was clearly and patently outside its heavy-hauler authority and in violation of §§ 303(c) and 306 of the Interstate Commerce Act.

In so saying consideration has been given to Jeffries' contention that its certificate is unique as to its parts hauling authority. While in a limited sense certain 500 or 750-pound bombs may not be complete without fins, Jeff-

ries was hauling 500 and 750-pound bombs without fins attached as were all the heavy haulers appearing in related cases and in the *International* proceeding. The same 500 and 750-pound bombs were in issue in all these proceedings, and it is those same bombs in issue here. The fin distinction, if any, is not persuasive of a different result under the applicable guidelines.[11]

## THE INJUNCTION QUESTION

In Baggett Transportation Company v. Hughes Transportation, Inc., supra, 393 F.2d 715–716, it is stated, "The Congressional concern with eliminating delay which prevents innocent parties from securing prompt and effective protection was manifest in the 1965 amendment. Thus, in discussing the amendment increasing the civil penalties, the House Report appropriately notes that: 'Under existing law, procedures for dealing with certain motor carrier violations are often slow and cumbersome, and frequently ineffective.' 1965 U.S.Code Cong. & Adm.News, Vol. 2, at p. 2929. Certainly one way of securing prompt and effective protection for innocent persons injured by the clearly illegal operations of other carriers is to give the injured persons the right to apply for injunctive relief independently of any Commission proceedings. § 322(b) (2) accomplishes this by allowing injured persons to enjoin 'clear and patent' violations."

The decision as to whether or not to issue an injunction rests to a large extent in the sound discretion of the trial court, and requires careful consideration of all salient facts as well as the applicable equitable principles.

Cessation of violation whether before or after the initiation of the suit does not bar the issuance of the injunction, nor render the case moot. Hecht

---

10. Such evidence is also detailed in the *International* Investigation, No. MC–C 5766, 108 M.C.C. 275 decided December 31, 1968, and ibid, MC–C 5766 decided October 26, 1971.

11. Jeffries states it does not intend to haul 500 and 750-pound bombs absent a prior successful application to Interstate Commerce Commission for a ruling that it can transport them under its certificated authority.

Co. v. Bowles, 321 U.S. 321, 64 S.Ct. 587, 88 L.Ed. 754 (1944); United States v. Article of Drug, etc., 362 F.2d 923 (CCA 3, 1966). The Court may act on the evidence before it at the time it decides the merits of the case. Ohio Oil Co. v. Conway, 279 U.S. 813, 49 S.Ct. 256, 73 L.Ed. 972 (1929); Munitions Carriers Conference, Inc. v. American Farm Lines, 440 F.2d 944 (CCA 10, 1971); United States v. W. T. Grant Co., 345 U.S. 629, 73 S.Ct. 894, 97 L.Ed. 1303 (1953).[12]

■ Jeffries ceased to haul the mentioned bombs some three years after the Interstate Commerce Commission had first ruled in such a manner as to let all heavy-haulers know it considered their certificated heavy-hauler authority as not including the right to haul such bombs. Although it states it ceased hauling them on January 28, 1972, there is no assurance it will not reconsider, especially in the light of its effort to distinguish its heavy-hauler authority from that possessed by the heavy-haulers in the *International* Investigation. It chose not to intervene in the *International* Investigation, and is not bound by the injunctive-type order there entered. Nor is there any reasonable assurance it will not again haul the described items weighing 150 pounds or less. Its tender to haul all explosives without apparent limitation as to size, weight or inherent requirement of palletization is still outstanding, insofar as the record shows.

■ There can be no question but that to some substantial extent plaintiffs have been injured by Jeffries illegal diversion of transportation business which otherwise plaintiffs would have shared in some amount. The Court finds that as a result of Jeffries' illegal transportation of Class A and Class B bombs and mentioned ammunition, the plaintiffs lost profits that would otherwise have accrued to them had not Jeffries

and others wrongfully diverted substantial 500 and 750-pound bombs and ammunition hauling business from plaintiffs. Thus plaintiffs are "injured" parties under 49 U.S.C. § 322(b) (2).

■ Absent an injunction, plaintiffs are totally devoid of any remedy at law for the financial damages they have obviously suffered and will again suffer if the illegal transportation is resumed. Under the self-help statute plaintiffs are not entitled to any of the damages they obviously suffered by reason of the unlawful operations. However, if an injunction is granted and is violated, plaintiffs in a contempt proceeding may recover damages suffered by reason of diversion of traffic from them in violation of the terms of the injunction. See Munitions Carriers Conference, Inc. v. American Farm Lines, 440 F.2d 944 (CCA 10 1971). Certainly if a permanent injunction were denied there would be no form of restraint as to this defendant. It is currently not bound by any Commission injunctive order.

Should Jeffries in the future again transport the type of bombs involved in this case, plaintiffs would need to commence a new proceeding under the self-help statute, or the Commission could commence its own injunction proceedings pursuant to 49 U.S.C. § 322 (b) (1). Either action at best could result only in the very kind of injunction sought here. Again, plaintiffs would have no remedy for their financial losses suffered by such future illegal transportation.

In view of the practicalities of the situation, namely, the absence of any legal remedy against a violator, for damages reasonably certain to occur to a carrier whose business is diverted away; the inclination of Jeffries to believe its "unique" heavy-haulers certificate distinguishes its situation from that of other size and weight haulers and per-

12. The Court and the parties have treated the issues as continuing to the date of trial, and the complaint is considered as refiled as a supplementary complaint as of the date of the trial on the merits, and to conform to the proof. See Rule 15, F.R.Civ.P.

mits the disputed transporting of bombs and ammunition, the temptation inspired by the very large profits obtainable if transportation of bombs again become a large business, or if the economic variables otherwise change and appeal to Jeffries as sufficiently favorable; any and all of which could happen quickly, there is real need of and justification for the issuance of a permanent injunction to protect plaintiffs in the future and to give them a legal means to obtain money damages in the event of a future violation.

## ATTORNEYS' FEES

The allowance of an attorney's fee is discretionary. 49 U.S.C. § 322(b) (2).[13] Obviously by granting statutory authority to district courts to award reasonable attorneys' fees and, as here, were unable to obtain any money damages through lack of adequate legal remedy it would be inequitable and would discourage some aggrieved parties from bringing appropriate self-help actions. Thus, the allowance of attorneys' fees is discretionary and they should be allowed when the equities disclose they are merited. Cf. Newman v. Piggie Park Enterprises, 390 U.S. 400, 19 L.Ed.2d 1263, 88 S.Ct. 964 (1968). According to the credible evidence the amount of attorneys' fees properly allowable for legal service necessarily performed in this self-help suit is $4,557.00 which plaintiffs previously have paid their attorneys, plus expenses of $117.00 and $247.50, for a total of $4,921.50. Plaintiffs are hereby allowed that sum ($4,921.50) as necessary, fair and reasonable attorneys' fees.

## THE INJUNCTION

Defendant Jeffries Truck Line, Inc., including its officers, employees, agents and representatives acting on its behalf, are hereby restrained and enjoined from transporting in interstate commerce and from participating in the transportation in interstate commerce under size and weight or so-called heavy-hauler authority by motor vehicle on public highways for compensation, bombs of an approximate weight of 500-pounds and 750-pounds whether palletized or unpalletized, unless certificated authority is first obtained from the Interstate Commerce Commission authorizing such transportation or unless changes in the design or structure of such bombs inherently requires palletization or which prevents manual handling of such bombs as they are or as they may be slightly modified to permit manual handling of them.

Further, defendant Jeffries Truck Lines, Inc., including its officers, employees, agents or representatives acting on its behalf, are hereby restrained and enjoined from transporting in interstate commerce and from participating in the transportation in interstate commerce under size and weight or so-called heavy-hauler authority by motor vehicle on public highways for compensation, cannon ammunition or other ammunition or Class A or Class B explosives mentioned in this opinion as having been transported by defendant, which individually or boxed weighs 150 pounds or less unless certificated authority is first obtained from the Interstate Commerce Commission authorizing such carriage or unless changes in the design and structure of such ammunition inherently requires palletization and prevents manual handling of such ammunition as palletized.

It is so ordered.

13. 49 U.S.C. § 322(b) (2): "The party who or which prevails in any such action may, in the discretion of the court, recover reasonable attorney's fees to be fixed by the court, in addition to any costs allowable under the Federal Rules of Civil Procedure, and the plaintiff instituting such action shall be required to give security, in such sum as the court deems proper, to protect the interests of the party or parties against whom any temporary restraining order, temporary injunctive, or other process is issued should it later be proven unwarranted by the facts and circumstances."