**TRI–STATE MOTOR TRANSIT COM-
PANY et al., Plaintiffs,
and
Interstate Commerce Commission,
Intervening Plaintiff,**

v.

**LEONARD BROS. TRUCKING CO., Inc.**

**No. 2150.**

United States District Court,
W. D. Missouri,
Southwestern Division.

April 26, 1972.

Lawrence R. Brown and Lawrence M. Berkowitz, Kansas City, Mo., for plaintiffs.

Harry F. Horak, Regional Counsel, I. C. C., Ft. Worth, Tex., for intervening plaintiff.

Lewis A. Dysart, Kansas City, Mo., William O. Turney, Washington, D. C., for defendant.

## FINDINGS, ORDER AND OPINION

ELMO B. HUNTER, District Judge.

Plaintiffs seek an injunction and attorneys' fees under the provisions of 49 U.S.C. § 322(b) (2), the so-called "self-help" statute which provides that if any person operates in clear and patent violation of any provisions of the Interstate Commerce Commission Act or any rule, regulation or order of the Commission any person injured may apply to the district court of any district where the violator operates for enforcement of the law, rule, regulation or order.[1]

The three plaintiffs, Tri-State Motor Transit Company, Riss and Co., and Yellow Freight System, Inc., are each common carriers by motor vehicle to whom certificates of convenience and necessity have been issued by the Interstate Commerce Commission authorizing plaintiffs to transport, among other items, Class A and Class B explosives over certain prescribed routes in interstate commerce. The Interstate Commerce Commission appeared as an intervening plaintiff under 49 U.S.C. § 322(b) (2) and obtained a stay order.[2]

Defendant, Leonard Bros. Trucking Co., Inc., (Leonard Bros.) a Florida corporation is a common carrier by motor vehicle to whom certificates of convenience and necessity have been issued by the Interstate Commerce Commission authorizing Leonard Bros. to transport, among other things, commodities, the transportation of which, by reason of size or weight, required the use of special equipment or special handling, over certain prescribed routes in interstate commerce. In the exercise of its authority, Leonard Bros. at all relevant times has operated in the Western District of Missouri.[3] The various routes over

---

1. This is a companion-type case to Tri-State Motor Transit Co., et al. v. International Transport, Inc., 343 F.Supp. 588 (W.D.Mo.1972) ; Tri-State Motor Transit Co. v. C & H Transportation Co., 347 F.Supp. 879 (W.D.Mo.1972) ; and Tri-State Motor Transit Company v. H. J. Jeffries Truck Lines, Inc., 347 F.Supp. 864 (W.D.Mo.1972).

2. See 49 U.S.C. § 322(b) (3) which provides: "In any action brought under paragraph (2) of this subsection, the Commission may notify the district court of

the United States in which such action is pending that it intends to consider the matter in a proceeding before the Commission. Upon the filing of such a notice the court shall stay further action pending disposition of the proceeding before the Commission."

3. This case was filed on January 21, 1969, in the United States District Court for the District of Kansas, and on August 4, 1969, was transferred to this Court pursuant to 28 U.S.C. § 1404(a).

which Leonard Bros. transported the goods in controversy are competitive, in whole or in part, with routes over which plaintiffs hold operating authority to transport such commodities. Defendant's hauling of these goods has resulted in diverting from plaintiffs some of such hauling.[4]

Commencing in May or June, 1967, and continuing to January 28, 1972, Leonard Bros. transported in interstate commerce over competitive routes 500-pound and 750-pound bombs containing Class A or Class B explosives.[5] Leonard Bros. also similarly transported considerable ammunitions (Class A or Class B explosives) weighing less than 150 pounds per individual item.[6] It continued to do so until February 15, 1972. On January 25, 1972, its vice-president in its interrogatory answers stated, "The company contemplates no radical change and proposes to continue the same type of transportation on the commodities shown . . . in Appendix A," which includes less than 150-pound per unit ammunition, i. e. not bundled, boxed, packaged or palletized. All mentioned transportation was performed for the Department of Defense.

Prior to commencing the above described transportation, Leonard Bros. filed with the Interstate Commerce Commission a tender or rate quotation, thereby holding itself out to transport all items described therein at the rates set out. Leonard Bros. interpreted its authority to include the transportation of all the items in dispute in this proceeding.[7] Included in the tender is a wide range of ammunition, bombs and other explosives without limitation as to weight.

## THE PRIOR RELATED LITIGATION

In June, 1967, plaintiffs had filed in this Court a complaint against International Transport, Inc., in which this Court issued a preliminary injunction against International restraining it from transporting certain Class A or Class B explosives weighing 150 pounds or less per package or box and referred the question of the legality of the transportation of 500 and 750-pound bombs to the Interstate Commerce Commission. The Interstate Commerce Commission issued its initial decision on January 14, 1969, in International Transport, Inc., Investigation and Revocation of Certificates, 108 M.C.C. 275, holding motor carriers size and weight authority did not include the right to transport 500 and 750-pound bombs.[8]

4. Thus, plaintiffs are injured parties under 49 U.S.C. § 322(b) (2).

5. See 49 C.F.R. § 172 for a commodity list of such explosives. Leonard Bros. transported the 500 and 750-pound bombs in substantial number until approximately six months prior to the commencement of this proceeding, and in limited number until January 28, 1972, on which date the Commission's injunctive-type order became effective by direction of a Three-Judge reviewing court. See International Transport, Inc. v. United States, 337 F. Supp. 985 (W.D.Mo.1972).

6. Such ammunition included 155 mm ammunition, 38-caliber Navy ammunition varying in weight from 55 pounds per shell to approximately 100 pounds per shell; boxed flares weighing 45 pounds *per box*; boxed mines six-to-a-box, weighing 49 pounds per box; and 40 mm ammunition weighing 5 pounds per shell.

7. Leonard Bros. strongly contends, although there is some evidence to the contrary, that it has not hauled 500 or 750-pound bombs *within the last six months*. Clearly it has during that time and earlier hauled the mentioned explosives of less than 150 pounds. Additionally, Leonard Bros. stipulated at the trial that in the six months prior to the filing of the lawsuit on January 21, 1969, it had transported 500 and 750-pound bombs and would have at that time hauled such bombs the transportation of which was offered to it, and that at least one of the plaintiffs could under their authority have hauled such shipments.

8. Leonard Bros. originally was not a party to the International proceeding, but after the initial decision, intervened, and participated thereafter albeit unsuccessfully in full support of International's position that size and weight (heavy-haulers) carriers under their certificates had authority to transport the questioned items.

## THE PRESENT LITIGATION

Following that decision, on January 21, 1969, plaintiffs filed their present complaint against Leonard Bros. seeking to enjoin, among other things, the transportation in interstate commerce of the 500 and 750-pound bombs and other mentioned Class A or Class B explosives of a weight of less than 150 pounds.[9] Plaintiffs obtained a temporary injunction.[10]

Thereafter, the Interstate Commerce Commission, after an additional hearing in which Leonard Bros. participated again held and ruled that heavy-haulers, including Leonard Bros., "beyond question" did not possess authority to transport the mentioned bombs. This decision was affirmed in a Three-Judge Court proceeding. See International Transport, Inc. v. United States, 337 F. Supp. 985 (W.D.Mo.1972).

Following the *International* decision the Interstate Commerce Commission filed a motion for Entry of Injunction Instanter against Leonard Bros. stating ". . . it appears that an injunction should now be entered to enjoin this transportation which has been twice found by the Commission to be unlawful."

## JURISDICTION

This Court has jurisdiction of the parties, and of controversies under 49 U.S.C. § 322(b) (2). Under that section no relief may be granted against Leonard Bros. unless Leonard Bros. operated in clear and patent violation of its certificated authority. As stated in Baggett Transportation Company v. Hughes Transportation, Inc., 393 F.2d 710, 716 (8 Cir. 1968), in discussing § 322(b) (2), "Not only is a remedy provided therein, the words 'clear and patent' are judiciously used to indicate jurisdiction separate and apart from the ICC's primary jurisdiction. Thus the House Report notes that, '* * * the words "clear and patent" are used and are intended as a standard of jurisdiction rather than as a measure of the required burden of proof.' 1965 U.S.Code Cong. & Adm.News, Vol. 2, at p. 2931. In order to regain primary jurisdiction of the controversy and also to prevent the use of § 322(b) (2) to harass carriers legitimately operating, the ICC may take jurisdiction of the matter under § 322(b) (3) and stay further action in the District Court." And as stated in Leonard Bros. Trucking Co. v. United States, 301 F.Supp. 893, 897, 898 n. 7, (S.D.Fla. 1969), "As is normally the case with reference to the doctrine of primary jurisdiction, 'Court jurisdiction is not thereby ousted, but is only postponed.' United States v. Philadelphia Nat'l Bank, 1963, 374 U.S. 321, 353, 83 S.Ct. 1715, 1737, 10 L.Ed.2d 915."

## THE QUESTION OF CLEAR AND PATENT VIOLATION

From the two hearings in this case, it is established that prior to May 17, 1967, no heavy-hauler in reliance on size and weight authority had attempted to haul Class A or Class B explosives. On that date, perhaps encouraged by the *Moss* decision,[11] and by the profits attainable, International energetically entered the hauling of Class A and Class B explosives.[12] Quickly, Leonard Bros. also commenced transporting such explosives in reliance on its heavy-hauler authority, as did numerous other heavy-haulers. To a great extent as to the majority of such items, they were testing

---

9. At the Court's suggestion and to expedite final disposition of this case, the parties have limited the commodities to be considered, but without prejudice to take up any other items in any other appropriate proceeding.

10. This was granted by the District Court of Kansas prior to the case's transfer to the Western District of Missouri.

11. Moss Trucking Co., Inc., Investigation of Operations, 103 M.C.C. 91 (1966).

12. See International Transport, Inc., et al., v. United States, et al., 337 F.Supp. 985 (W.D.Mo.1972).

their size and weight authority by the items in the packaged or palletized form in which they were tendered by the shipper regardless of whether the inherent nature of the shipped items "required" boxing or palletizing.

■ However, on April 10, 1959, if not earlier, as a result of the Interstate Commerce Commission's decision in W. J. Dillner Transfer Co., Investigation of Operations, 79 M.C.C. 335, the heavy-haulers were clearly on notice that in bundling, aggregating or palletizing, the general rule of construction is that it is the individual commodity itself that is the pertinent consideration as respects a carrier's size and weight authority, unless the inherent nature of the commodity itself requires it to be bundled or palletized for its own protection, and that even in that limited circumstance it is the minimum bundle so required that must be looked to rather than the actual bundle tendered by the shipper.[13] As noted in Ace Doran Hauling & Rigging Co., Investigation, 108 M.C.C. at 726 (1969): "Following favorable decisions upon judicial review, in W. J. Dillner Transfer Company v. I.C.C., 193 F.Supp. 823 (1961), affirmed in Dillner Transfer Co. v. United States, 368 U.S. 6, 82 S.Ct. 16, 7 L.Ed.2d 16 (1961), the Commission and the motor carrier industry came to rely on the *Dillner* standards, and these criteria were utilized to determine the status under heavy-hauler authority of a wide scope and variety of commodities." Certainly, on December 31, 1968, when the Interstate Commerce Commission report in *International* was made, it should have been crystal clear to Jeffries that for the purpose of testing its heavy-hauler authority in the Class A and Class B explosives field, it could not resort to the tendered items as palletized, for weight and size, absent such palletization being inherently required by the items involved.

■ The evidence in this case is such that it is the Court's finding that the above-mentioned and described ammunition and explosives transported by Leonard Bros. and weighing less than 150 pounds per commodity did not inherently require palletization or bundling, and is easily handled in loading, unloading, and otherwise, by hand.[14] No special equipment is required for that purpose. Additionally, it is the Court's finding that the mentioned 500 and 750-pound bombs transported by Leonard Bros. did not inherently require palletization or bundling, and that no special equipment is "required" for the loading or unloading of the individual bomb. Finally, it is the Court's finding that the mentioned transportation of the commodities by Leonard Bros. was a clear and patent violation under 49 U.S.C. § 322(b) (2) of Leonard Bros. certificated authority in violation of 49 U.S.C. §§ 303(c) and 306 requiring a certificate which authorizes the particular transportation engaged in.

■ In making the above "clear and patent" finding, this Court adopts the reasoning, criteria and guidelines for making such a finding, as set out in the three-judge review and in the two Interstate Commerce Commission hearings and reports on this same kind of issue in *International*. See International Transport, Inc., et al. v. United States of America, et. al., 337 F.Supp. 985, (W.D. Mo.1972); International Transport, Inc., Investigation, No. MC–C 5766, 108 M.C.

---

13. Otherwise, the Commission felt it would lose orderly control of the motor carriers' authority; for each shipper by his own choice or practice could arrange his tender to give to heavy-haulers authority to transport items clearly never intended for them to transport. Such things as books, pencils, feathers, etc., could be so aggregated as to present a weight and size situation.

14. In Ace Doran Hauling & Rigging Co., Investigation, 108 M.C.C. at 723 (1969) the Interstate Commerce Commission stated, "For one thing these [prior] cases show little in the way of heavy-hauler interest in objects which weigh less than 200 pounds, and, where the issue did arise, manual lifting appears universally to have been considered a reasonably practical method of handling such items."

C. 275, decided December 31, 1968, and ibid, MC–C 5766 decided October 26, 1971. In the Three-Judge Decision, supra, it was summarized thusly: "The said guidelines, *all of which, by way of emphasis, have been developed in prior cases*, may be described as follows: (1) the basic characteristics, if any, of the commodity which occasion the use of special equipment; (2) prevailing industry practice with regard to its handling; (3) the manner in which it or analogous commodities have historically been shipped; and (4) its traditional sphere of carriage."

It is patently evident from what has been said that the described 150-pound or less items transported by Leonard Bros. tested by these guidelines places their transportation clearly and patently beyond its certificated authority as a heavy hauler.

As to the 500 and 750-pound bombs, it would serve only to prolong this opinion to detail all the evidence applicable to each of the guidelines for interpreting and applying a certificate such as Leonard Bros. The history of the manual handling of such bombs of this general type, size and weight, including the rolling of them by hand, both in loading them for transportation and in unloading them, is part of the evidence in this case.[15] The reasonable susceptibility of the individual bombs to such manual handling, both past and current, and without any need of special equipment was established. The history of their shipping as not having included heavy-haulers prior to 1967 is undisputed. Thus, the evidence, viewed in the light of the mentioned guidelines fully supports the finding that the transportation of the 500 and 750-pound bombs by Leonard Bros. was clearly and patently outside its heavy-hauler authority and in violation of §§ 303(c) and 306 of the Interstate Commerce Act.

## THE INJUNCTION QUESTION

In Baggett Transportation Company v. Hughes Transportation, Inc., supra, 393 F.2d 715–716, it is stated, "The Congressional concern with eliminating delay which prevents innocent parties from securing prompt and effective protection was manifest in the 1965 amendment. Thus, in discussing the amendment increasing the civil penalties, the House Report appropriately notes that: 'Under existing law, procedures for dealing with certain motor carrier violations are often slow and cumbersome and frequently ineffective.' 1965 U.S.Code Cong. & Adm.News, Vol. 2, at p. 2929. Certainly one way of securing prompt and effective protection for innocent persons injured by the clearly illegal operations of other carriers is to give the injured persons the right to apply for injunctive relief independently of any Commission proceedings. § 322(b) (2) accomplishes this by allowing injured persons to enjoin 'clear and patent' violations."

█ The decision as to whether or not to issue an injunction rests to a large extent in the sound discretion of the trial court, and requires careful consideration of all salient facts as well as the applicable equitable principles.

Leonard Bros. ceased to haul the 500 and 750-pound bombs two years after the Commission had ruled that heavy-hauler authority did not authorize their transportation. Leonard Bros. stopped hauling only after the Three-Judge Court approval of the *International* ruling. Its offer in its tender to haul all explosives without limitation as to size, weight or inherent requirement of palletization was outstanding at trial time. And as earlier stated it transported ammunition weighing much less than 150 pounds per unit, and not inherently requiring palletizing, to the date of trial

15. Such evidence is also detailed in the International Investigation, No. MC–C5766, 108 M.C.C. 275 decided December 31, 1968, and ibid, MC–C 5766 decided October 26, 1971. Leonard Bros. was an intervenor in International, affirmed by a Three-Judge Court in International Transport, Inc. v. United States, 337 F.Supp. 985 (W.D.Mo.1972).

with indications from its executive vice-president that the company proposes to continue "the same type of transportation on commodities shown . . . in Appendix A." Nor is there any reasonable assurance it will not again haul the described items weighing 150 pounds or less.

■ Absent an injunction, plaintiffs are totally devoid of any remedy at law for the financial damages they have obviously suffered and will again suffer if the illegal transportation is resumed. Under the self-help statute plaintiffs are not entitled to any damages occasioned by reason of the unlawful operations. However, if an injunction is granted and is violated, plaintiffs in a contempt proceeding may recover damages suffered by reason of diversion of traffic from them in violation of the terms of the injunction. See Munitions Carriers Conference, Inc. v. American Farm Lines, 440 F.2d 944 (C.C.A. 10 1971). Certainly if a permanent injunction were denied there would be no form of restraint as to this defendant. It is currently not bound by any Commission injunctive order.

Should Leonard Bros. in the future again transport the type of bombs involved in this case, plaintiffs would need to commence a new proceeding under the self-help statute, or the Commission could commence its own injunction proceedings pursuant to 49 U.S.C. § 322(b)(1). Either action at best could result only in the very kind of injunction sought there. Again, plaintiffs would have no remedy for their financial losses suffered by such future illegal transportation.

■ In view of the practicalities of the situation, namely, the absence of any legal remedy against a violator, for damages reasonably certain to occur to a carrier whose business is diverted away; the inclination of Leonard Bros. to be-

lieve its heavy-hauler's certificate permits the disputed transporting of bombs and ammunition, the temptation inspired by the very large profits obtainable if transportation of bombs again become a large business, or if the economic variables otherwise change and appeal to Leonard Bros. as sufficiently favorable; any and all of which could happen quickly, there is real need of and justification for the issuance of a permanent injunction to protect plaintiffs in the future and to give them a legal means to obtain money damages in the event of a future violation.

## ATTORNEYS' FEES

■ The allowance of any attorney's fee is discretionary. 49 U.S.C. § 322(b)(2).[16] Obviously by granting statutory authority to district courts to award reasonable attorneys' fees Congress had in mind that if successful plaintiffs routinely had to bear their own attorneys' fees and, as here, were unable to obtain any money damages through lack of adequate legal remedy it would be inequitable and would discourage some aggrieved parties from bringing appropriate self-help actions. Thus, the allowance of attorneys' fees is discretionary and they should be allowed where, as here, the equities disclose they are merited. Cf. Newman v. Piggie Park Enterprises, 390 U.S. 400, 88 S.Ct. 964, 19 L.Ed.2d 1263 (1968). According to the credible evidence the amount of reasonable attorneys' fees properly allowable for legal service necessarily performed in this self-help suit is $4,921.50 which plaintiffs previously have paid their attorneys ($4,557.00 plus $117, plus $247.50). Plaintiffs are hereby allowed that sum ($4,921.50).

■ Plaintiffs also desire attorneys' fees for legal services performed before the Commission and while Leonard Bros. was an intervenor before the Commis-

16. 49 U.S.C. § 322(b)(2): "The party who or which prevails in any such action may, in the discretion of the court, recover reasonable attorney's fees to be fixed by the court, in addition to any costs allowable under the Federal Rules of Civil Procedure . . . . ."

sion in the *International* case, supra. However, Title 49 U.S.C., § 322(b) (2) which is the only authority for granting attorneys' fees in the instant case reasonably interpreted does not provide for such fees. While it would encourage those using the self-help statute to be provided attorneys' fees, for services rendered while the Interstate Commerce Commission has the subject of the suit under investigation, Congress, as yet, has made no such provision. In the absence of such statutory authority, this Court declines to award such fees.

## THE INJUNCTION

Defendant Leonard Bros., including its officers, employees, agents and representatives acting on its behalf, are hereby restrained and enjoined from transporting in interstate commerce and from participating in the transportation in interstate commerce under size and weight or so-called heavy-hauler authority by motor vehicle on public highways for compensation, bombs of an approximate weight of 500 pounds and 750 pounds whether palletized or unpalletized, unless certificate authority is first obtained from the Interstate Commerce Commission authorizing such transportation or unless changes in the design or structure of such bombs inherently requires palletization or which prevents manual handling of such bombs as they are or as they may be slightly modified to permit manual handling of them.

Further, defendant Leonard Bros., including its officers, employees, agents or representatives acting on its behalf, are hereby restrained and enjoined from transporting in interstate commerce and from participating in the transportation in interstate commerce under size and weight or so-called heavy-hauler authority by motor vehicle on public highways for compensation, of cannon ammunition or other ammunition which individually or boxed weighs 150 pounds or less unless certificated authority is first obtained from the Interstate Commerce Commission authorizing such carriage or unless changes in the design and

structure of such ammunition inherently requires palletization and prevents manual handling of such ammunition as palletized.

It is so ordered.

