**NATIONWIDE AUTO TRANSPORTERS, INC., Plaintiff,**

v.

**MORGAN DRIVEAWAY, INC., Defendant.**

**No. 77 Civ. 5272.**

United States District Court, S. D. New York.

Nov. 14, 1978.

Williamson & Schoeman, New York City, for plaintiff.

Paul D. Borghesani, James B. Buda, Elkhart, Ind., Arsham & Keenan, New York City, for defendant.

LASKER, District Judge.

On November 30, 1977, this court granted the motion of Nationwide Auto Transporters, Inc., for a preliminary injunction restraining Morgan Driveaway, Inc., from transporting motor homes in driveaway service from certain points in Indiana. Nationwide now moves for summary judgment on its claim for a permanent injunction against Morgan. Morgan, in turn, moves to amend its answer to add a counterclaim that Nationwide, together with Chandler

Trailer Convoy, Inc., is transporting motor homes in violation of its authorization from the Interstate Commerce Commission (ICC), and to add Chandler as a party to the lawsuit. For the following reasons, both motions are denied.

## I.

*Nationwide's Motion for Summary Judgment*

Morgan contends that the question whether Nationwide is conducting a valid interline operation is a genuine issue of material fact which must be resolved before Nationwide is entitled to a permanent injunction. To understand Morgan's claim, some background information is necessary.

Nationwide is authorized by the ICC to transport motor homes in secondary movements in driveaway service between Elkhart, Indiana, and other points in the United States. (MC–135633 Sub. 4; Herman Affidavit of October 26, 1977, ¶ 2) By virtue of an interline agreement with Chandler, Nationwide is also authorized to move traffic between Wakarusa, Middlebury and Goshen, Indiana, through Elkhart, to other points in the United States. (Herman Affidavit of October 26, 1977, ¶ 3) However, Morgan alleges that Nationwide is violating agency standards governing interline agreements, because—says Morgan—Nationwide is transporting motor homes in the disputed area on its own while Chandler is a front, that is, merely a passive partner to the agreement. See *England & Sons, Inc., Extension—Milton, Pa.*, 128 M.C.C. 142 (1977); *Gerard Motor Express, Inc., Common Carrier Application*, 2 M.C.C. 271 (1937); *Interstate Commerce Commission v. Elliott*, 113 F.Supp. 583 (E.D.Okla.1953); see also *Performance of Motor Common Carrier Service by Riss & Co., Inc.*, 48 M.C.C. 327 (1948). To support its claim, Morgan submits the affidavits of various employees of motor home manufacturers in Middlebury and Wakarusa, who state that all the arrangements for transportation of their motor homes, including pickup and delivery, billing, and the handling of damage and loss claims, have been made by Nationwide. In addition, Morgan relies on copies of invoices, bills of lading and damage claims, sent to these manufacturers which, with several exceptions, refer only to Nationwide.

Nationwide denies that its interline with Chandler is being operated in violation of ICC rules. It relies on the affidavit of its agent in Elkhart, Reeves Comfort, who states that he also acts as agent for Chandler, arranging the small leg of each journey on behalf of Chandler and the longer leg on behalf of Nationwide. (Comfort Affidavit, ¶ 1) Nationwide also submits the affidavit of a former employee in Elkhart who states that it was his understanding, during his employment, that Nationwide and Chandler divided responsibility for the transportation of motor homes. (Reeves Affidavit, ¶ 4) Finally, Nationwide relies on the affidavit of its former counsel who represents that the mechanics of the interline agreement were approved by the Indiana regional offices of the ICC and the Department of Transportation. (Hernly Affidavit)

Despite this factual dispute, Nationwide asserts that it is entitled to summary judgment because the validity of the interline operation cannot be raised in a private action under § 222(b)(2) of the Interstate Commerce Act, 49 U.S.C. § 322(b)(2),[1] but only by or before the ICC. It relies on *Nelson v. United States*, 355 U.S. 554, 78 S.Ct. 496, 2 L.Ed.2d 484 (1958), which held that the scope of operations under an ICC permit cannot be collaterally attacked, and the fact that all of the cases cited by Morgan involving the validity of an interline agreement were either proceedings before the ICC or enforcement actions in federal court initiated by the ICC.

1. § 222(b)(2), 49 U.S.C. § 322(b)(2) provides, in pertinent part:

"If any person operates in clear and patent violation of any provisions of section 303(c), 306, 309, or 311 of this title, or any rule, regulation, requirement, or order thereunder, any person injured thereby may apply to the district court of the United States for any district where such person so violating operates, for the enforcement of such section, or of such rule, regulation, requirement, or order."

■ The argument is not persuasive. The rule against collateral attack set out in *Nelson*, applies to the situation in which a litigant seeks to have a court expand the scope of a permit granted by the ICC, thus impinging directly on the agency's decision, rather than one, as here, in which a litigant claims that the terms of the ICC's authorization have been violated. See *Callanan Road Improvement Co. v. United States*, 345 U.S. 507, 73 S.Ct. 803, 97 L.Ed. 1206 (1953); *Interstate Commerce Commission v. Consolidated Freightways, Inc.*, 41 F.Supp. 651 (D.N.D.1941). Moreover, the fact that the ICC was involved in the cases relied on by Morgan does not indicate that a court lacks the ability to determine whether an interline fails to satisfy ICC rules since, as in *Interstate Commerce Commission v. Elliott*, 113 F.Supp. 583 (E.D.Okl.1953), it may rely on prior ICC decisions to determine the standard for a valid interline. Accordingly, Nationwide has not established that the court lacks the power or the ability to decide this issue.

■ Morgan argues that the validity of the interline is material to Nationwide's motion in two respects: in regard to Nationwide's standing to sue under § 222(b)(2) or, alternatively, to a defense of "unclean hands" barring Nationwide from seeking equitable relief. See *Precision Instrument Manu. Co. v. Automotive Maint. Mach. Co.*, 324 U.S. 806, 65 S.Ct. 993, 89 L.Ed. 1381 (1945). Since Nationwide is authorized by virtue of the interline to conduct the operations involved here and has provided evidence that it has been damaged by Morgan's activities (Steinhagen Affidavit, ¶ 3, and attached "Traffic Exhibit 1977"), we believe that it has standing to sue under § 222(b)(2) and that the possible invalidity of the operation of the interline is relevant only with respect to an unclean hands defense. Regardless of which theory is relied on, however, the affidavits accompanying the motions establish that a question of fact exists concerning whether the implementation of the interline satisfies ICC rules, and therefore summary judgment is inappropriate until this issue is resolved.

## II.

*Morgan's Motion to Amend its Answer and to Add Chandler as a Party*

■ In its proposed counterclaim, Morgan, relying on the factual allegations described above, seeks an injunction under § 222(b)(2) of the Interstate Commerce Act, 49 U.S.C. § 322(b)(2), to stop Nationwide and Chandler from transporting motor homes in violation of ICC rules.

The right to seek an injunction under § 222(b)(2) of the Interstate Commerce Act is limited to "any person injured" by a violation of the Act. Morgan itself acknowledges that, for purposes of § 222(b)(2), "injury" refers to the invasion of a legally protected interest, (Defendant's Memorandum in Opposition, p. 5) therefore, Morgan cannot seek relief under this provision unless it is authorized by the ICC to conduct the operations in question. See *Tri-State Motor Transit Co. v. H. J. Jeffries Truck Lines, Inc.*, 347 F.Supp. 864, 870 (W.D.Mo.1972).[2] In our earlier decision, we rejected Morgan's contention that it was authorized to operate this route thanks to its "portable shelter" or "camper and campcoach" certificates. This conclusion has been confirmed by the recent decision of the ICC which, in considering Morgan's application to operate the route involved here, found that neither of Morgan's preexisting grants of authority justified such operations. *Morgan Drive-Away, Inc., Extension-Homes in Indiana*, MC–103993, Sub. No. 903. Since Morgan has supplied no new authority for its claim to conduct the operations in dispute, we conclude that it is not

---

**2.** "There can be no question but that to some substantial extent plaintiffs have been injured by Jeffries' illegal diversion of transportation business which otherwise plaintiffs would have shared in some amounts. The Court finds that as a result of Jeffries' illegal transportation of Class A and Class B bombs and mentioned ammunition, the plaintiffs lost profits that would otherwise have accrued to them had not Jeffries and others wrongfully diverted substantial 500 and 750-pound bombs and ammunition hauling business from plaintiffs. Thus plaintiffs are 'injured' parties under 49 U.S.C. § 322(b)(2)." 347 F.Supp. 864, 870 (W.D.Mo.1972).

"injured" by Nationwide's activities and therefore lacks standing to seek an injunction under § 222(b)(2). Accordingly, Morgan's motion to amend its answer and to add Chandler as a defendant for purposes of its proposed counterclaim is rejected.

### III.

Determination of the motion for summary judgment, of course, required us to analyze the facts of record. That examination makes it appear that the bulk of the witnesses, records and events which will be determinative of the case are located in or about Elkhart, Indiana. If this analysis is correct, it naturally raises the question whether trial in the district in which Elkhart is located would not be more appropriate than trial in the Southern District of New York. It is left to the defendant to move for transfer under 28 U.S.C. § 1404(a) to the Indiana district if it believes that trial there would be more appropriate.

Plaintiff's motion for summary judgment and defendant's motion to amend its answer are denied.

It is so ordered.